IN THE COURT OF COMMON PLEAS FOR WARREN COUNTY, OHIO

CIVIL DIVISION

COMMON PLEAS COURT
WARREN COUNTY.OHIO
FILED

2022 JUN 23 AM 11: 58

JAMES L. SPAETH
CLERK OF COURTS

MARK MESSER
25 West Orchard Avenue
Lebanon, Ohio 45036-2107

and

JENNIFER MESSER
25 West Orchard Avenue
Lebanon, Ohio 45036-2107

      *Plaintiffs,*

v.

ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY
C/O CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43210

      *Defendant.*

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CASE NO.:
*22CV95248*
JUDGE
*ODA*

---

## PLAINTFFS MARK MESSER AND JENNIFER MESSER'S COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT AND BAD FAITH

### (JURY DEMAND ENDORSED HEREON)

---

**NOW COMES** Plaintiff Mark Messer and Jennifer Messer, by and through undersigned counsel, and for their Complaint against the Defendant Allstate Vehicle and Property Insurance Company states as follows for breach of contract, bad faith, and declaratory judgment following the destruction of his home:

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

## JURISDICTION AND VENUE

1.      Plaintiffs Mark Messer (Mr. Messer) and Jennifer Messer (Mrs. Messer) (collectively the "Messers" or "Insureds") are individuals, residing at 25 West Orchard Avenue, Lebanon, Ohio 45036-2107 in Warren County.

2.      Defendant Allstate Vehicle and Property Insurance Company ("Allstate") is a corporation that provides property and casualty insurance policies, with corporate offices located at 2775 Sanders Road, Northbrook, Illinois 60062.

3.      Allstate maintains offices nationwide, including many throughout the state of Ohio, and issued a policy declaration for "House & Home" (the "Policy"), bearing policy number 826 041 380 to the Plaintiff that was effective April 30, 2021 for the property located at 25 West Orchard Avenue, Lebanon Ohio 45036 in Warren County, Ohio (the "Subject Property"). The Policy in effect at the time of the loss is attached as Exhibit A.

4.      Jurisdiction and venue are proper in this forum pursuant to both Rule 3(B)(3) and 3(B)(6) of the Ohio Rules of Civil Procedure. Defendants conducted activity, and the claim for relief arose in Warren County.

## STATEMENT OF FACTS

5.      The Messers incorporate and restate the above paragraphs as if fully rewritten herein.

6.      A loss by fire (the "Fire") occurred around at 12:00 A.M., on August 14, 2021 at the Messers personal residence and Subject Property at 25 West Orchard Avenue, Lebanon, Ohio 45036 ("Home").

7.      At all relevant times, the Home was insured by Allstate pursuant to an insurance policy issued by Allstate. See, Exhibit A.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

8. The Policy includes coverage for "dwelling protection," "other structures protection," "Personal Property Protection," "Additional Living Expense[s]," "Family Liability Protection," "Guest Medical Protection," and "Water Back-Up." The Policy also includes a mortgagee clause that requires Allstate to protect the mortgagee's interest in the property after damage to the building structure. Exhibit A.

9. The Messers made all premium payments required by the Policy. Upon information and belief, the premiums are still being paid to Allstate even though the Home and personal property has been destroyed leaving nothing left to insure.

10. As a result of the Fire, the Home and all personal property within the Home has been destroyed.

11. Immediately after the Fire, Allstate received prompt notice of same. Upon Allstate's demand, the Messers provided a Sworn Statement in Proof of Loss reflecting a loss of at least $506,417. Allstate was provided with a detailed, itemized and line-by-line, 32-page report of the personal property loss suffered by the Insureds. The Messers loss exceeds the policy limit.

12. In November 2021, Allstate demanded that the Messers produce voluminous documents including federal and state income tax returns, bank statements, phone records, lenders for mortgage records, remodeling documents from third parties, and communications with their insurance agent. Many of these documents were destroyed in the Fire thereby requiring the Messers to compile them from third parties. Allstate also demanded Mr. Messer's personal Facebook archive, including allowing Allstate to have direct access to his account.

13. Most of the documents and information Allstate demanded were not required to be provided to Allstate. Nevertheless, the Messers complied with Allstate's demands. The Messers hoped that doing so would result in prompt payment by Allstate. The Messers also complied

3

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

because Allstate misrepresented the terms of the Policy by stating or implying that the information and documents were required to be produced when, in fact, they were not.

14.     After receiving the documents, Allstate demanded that the Messers submit to an examination under oath ("EUO"). Allstate's demand for an EUO was not based on any good faith investigation into the Messers' claim; rather, it was intended to intimidate the Messers and delay the ultimate resolution of the claim.

15.     Again, the Messers complied and answered Allstate's questions at the EUO.

16.     After submitting all documents demanded by Allstate and submitting to an EUO, Allstate refused to indemnify their insured for their loss. Allstate claims that it is still in the process of investigating the claim 10 months after the Fire.

17.     Allstate has not denied coverage of the claim. Despite the lack of denial, Allstate refuses to compensate the Messers, their Insured, for their loss.

18.     The delays by Allstate have caused increased harm to the Messers. Since the Fire, inflation in the United States has been rampant. The price of all goods and services since August, 2021 have increased anywhere from 10% to 40%. The cost of construction materials and labor is at the high end of the inflation spectrum. Due to Allstate's foot dragging and unwarranted delays, the cost to reconstruct the Messers home has increased substantially. Because the loss was a total loss, the cost will now exceed the policy limit. Had Allstate indemnified their insured, or paid off the mortgage as required by the terms of the policy, the Messers would have been able to proceed with reconstruction at August, 2021 prices. Instead, they will be required to rebuild their lives at August, 2022 prices, which could be an increase of nearly $100,000.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

## COUNT ONE: BREACH OF CONTRACT

19.     The Messers incorporate and restate the above paragraphs as if fully rewritten herein.

20.     The Messers purchased a policy of insurance whereby Allstate promised to insure the home, Subject Property, against loss caused by fire. The Policy insured the dwelling, other structures, and personal property. The Policy also provides for Additional Living Expenses.

21.     The Messers fulfilled their obligations under the contract by timely paying the Policy's premiums and satisfying all conditions necessary for coverage and to file this lawsuit against Allstate.

22.     The losses suffered by the Messers are covered losses. There are no exclusions that apply that would deny them coverage for their loss.

23.     Allstate breached the contract by breaking their promise to the Messers. Allstate refuses to provide coverage for losses caused by the August 14, 2021 Fire. This includes, without limitation, refusing to issue payment for the full amount of loss available under the "dwelling protection" coverage; refusing to issue payment under the "mortgagee" provision; and refusing to issue payment under the "personal property" coverage.

24.     As a direct, foreseeable, and proximate result of Allstate's breach of contract, the Messers have suffered damages in excess of $25,000. This amount does not include the payment the Defendant was required to make under the "mortgagee" section of the Policy and does not include further amounts to be proven at trial.

## COUNT TWO: DECLARATORY JUDGMENT

25.     The Messers incorporate and restate the above paragraphs as if fully rewritten herein.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

26.     The Messers purchased a policy of insurance from Allstate, through the Victor Gray Agency, that insured the Home against losses caused by a fire. The Policy insured the dwelling and personal property and contains numerous additional coverages and protections.

27.     The Fire destroyed the Home and the personal property belonging to the Messers and others.

28.     Allstate has not denied coverage for the loss caused by the Fire. Yet, Allstate refuses to indemnify the Messers, notwithstanding their above and beyond cooperation with demands for documentation and information outside of the scope of the Policy.

29.     The following provisions provide that the loss caused by the Fire is covered by the Policy (bolding present in original document) (Labeled as Exhibit A):

**Section I—Your Property**

                * * *

**Dwelling Protection—Coverage A**

**Property We Cover Under Coverage A:**

1. **Your dwelling**, including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3. Wall-to-wall carpeting fastened to **your dwelling**.

**Other Structures Protection—Coverage B**

**Property We Cover Under Coverage B**
1. Structures at the address shown on the Policy Declarations separated from your dwelling by clear space.
2. Structures at the address shown on the Policy Declarations connected to your dwelling by only a fence, utility line, or similar connection.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

3. Construction materials and supplies at the residence premises for use in connection with structures other than your dwelling.

4. Wall-to-wall carpeting fastened to building structures other than your dwelling, at the address shown on the Policy Declarations.

**Personal Property Protection — Coverage C**

**Property We Cover Under Coverage C:**

1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from the **residence premises**, coverage is limited to 10% of **Personal Property Protection – Coverage C**.

30. In failing to provide coverage for the Fire that destroyed The Messers' home, Allstate has failed to uphold their terms of the Policy agreement it entered with the Messers.

31. Accordingly, the Messers are entitled to declaratory judgment establishing that the Home is covered under Coverage A, Coverage B, and Coverage C of the Policy and that certain additional coverages are applicable to the claim as well and that no exclusions apply that would deny the Messers coverage under the policy.

## COUNT THREE: BAD FAITH

32. The Messers incorporate and restate the above paragraphs as if fully rewritten herein.

33. Allstate has acted in Bad Faith in numerous ways since they were informed of the loss to the Insureds home. This includes, but is not limited to, false statements pertaining to the terms of the Policy and the obligations of the insured following the loss, refusal to pay the mortgagee, and foot dragging to delay payment on the claim.

34. In a letter dated September 28, 2021 sent to their insured, Allstate misrepresented the Policy requirements and conditions following a loss.

7

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

35. The following are the Policy terms pertaining to the Conditions for Coverage under Section I (bolding was present in original document) (Labeled as Exhibit A):

**3. What You Must Do After A Loss**

In the event of a loss to any property that may be covered by this policy, **you** must:

a) immediately give **us** or **our** agent notice. Report any theft to the police as soon as possible.

b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.

c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.

d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.

e) produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.

f) as often as **we** reasonably require:

1) show **us** the damaged property. **We** have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of **you** or others, including, but not limited to, civil, governmental or military authorities, that prevent **us** from viewing and inspecting the loss. **We** may require **you** to accompany **us** when **we** conduct these activities.

2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.

3) produce representatives, employees, members of the **insured person's** household or others to the extent it is within the **insured person's** power to do so; and

8

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

g) within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:

1) the date, time, location and cause of loss;

2) the interest **insured persons** and others have in the property, including any encumbrances;

3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;

4) any other insurance that may cover the loss;

5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period; and

6) at **our** request, the specifications of any damaged **building structure** or other structure.

36. Allstate's September 28, 2021 correspondence to the insured contradict the policy terms and conditions. It provides (Labeled as Exhibit B):

*The following is reproduced from your policy:*

<u>WHAT YOU MUST DO AFTER A LOSS:</u>

In the event of a loss to <u>any</u> property that this insurance may cover, you must do the *following things:*

A. *Promptly* give us or our agent *written notice.* Report any theft to the police. *If the loss involves a credit card or charge plate, written notice must also be given to the company that issued the card or plate.*

B. Protect the property from further loss. This includes making reasonable and necessary repairs to protect it.

C. *Promptly* separate the damaged from undamaged personal property. Give us a detailed list of the damaged, destroyed, or stolen property, showing the quantity, cost, actual cash value, and the amount of the loss claimed.

D. *Give us all original bills, invoices and other vouchers, or certified copies,* which we may reasonably request and *keep an accurate record of any repair expenses.*

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

E. Produce receipts for any increased costs to maintain your standard of living while you reside elsewhere, and records *pertaining* to any loss of rental income.

F. *Show the damaged property whenever we reasonably ask.* At our request, submit to examinations under Oath, separately and apart from any other person. Produce representatives, employees, members of the Insured's household at our request <u>within the insured's power to do so.</u>

G. Within 60 days after the loss, give us a signed, Sworn Proof of Loss. This statement *should* include the following information:

1. The time and cause of the loss.

2. The interest you and others have in the property, including any encumbrances.

3. The actual cash value and amount of loss of each item damaged or destroyed.

4. Other insurance that may cover the loss.

5. Changes in title, use occupancy, or possession of the property during the policy period.

6. *The specifications of any damaged building alteration or improvement we may request.*

7. *Evidence supporting a claim under the Credit Card and Check Forgery protection, this should state the cause and the amount of the loss.*

(Emphasis reflects the differences between the correspondence and the policy terms and conditions).

37.     Despite not being required to by the Policy, but being represented as such by Allstate, the Messers provided Allstate with income tax returns, bank statements (individual and business), business financial records, cell phone records with telephone calls and text messages reflected therein, mortgage records, name and contact information for anyone who performed

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

repairs at the property, Facebook account information, prior claim history, and an authorization to obtain information signed by Mr. Messer.

38.     Also not required by the Policy, but demanded by Allstate, were documents relating to repairs, remodeling and improvement including emails, letters, text messages, etc., documents and information pertaining to security monitoring systems, correspondence with Lebanon and correspondence with Victor Gray Insurance Agency.

39.     On May 12, 2022 Allstate demanded additional documents not required by the policy including an Excel spreadsheet with transactions from February 7, 2022 through March 3, 2022, Mortgage Statements available in a file that is not password protected, correspondence with Lebanon, records from K&S Cabinetry, identification of the names and phone numbers on the cell phone logs, permits filed with Lebanon, forensic image Mr. Messer's cell phone.

40.     Allstate's demands were predicated under a fabricated "duty to cooperate" clause that does not exist in the Policy for this claim. Despite, this fabrication, the Messers have gone above and beyond the Policy requirements in a desperate attempt to speed up the claims process.

41.     Allstate has an obligation to exercise good faith in handling of claims, including that of the Messers. By sending correspondence that falsely stated the alleged "requirements" of the Messers policy, and by demanding an excess of documents from the Messers that are not required by the terms of the Policy, Allstate has violated this obligation of good faith.

42.     Allstate does not have a reasonable justification to deny the Messers' claim submitted, and it has intentionally delayed processing the claim. Allstate's actions are intended to cause the Messers to miss the deadline to sue Allstate, which Allstate has hidden from the insureds. The Policy has an "Action Against Us" section that requires the filing of a suit from one year of

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

the date of the cause of action. Allstate has refused to advise their insured of this provision and are delaying their claim handling to extend beyond this deadline.

43. The delay in claim handling has resulted in actual damages to the insured as the cost of construction materials and labor has greatly increased since August, 2021. The Messers will be unable to rebuild their Home and replace their personal property within the Policy limits now due to the increased cost of same, which such increased loss would not have occurred but for Allstate's foot dragging and delayed claims handling.

44. Allstate has engaged in bad faith claims handling by refusing to pay the mortgagee pursuant to the mortgagee clause. As a result, the Messers are continuing to pay for a mortgage (and paying interest) on a Home that no longer exists. The Messers are continuing to pay for insurance coverage through Allstate on a Home that no longer exists. Allstate continues to collect a premium for a Home it no longer insures.

45. Allstate has engaged in further acts of bad faith in their claim handling as will be evinced in discovery.

46. As set forth in Ohio Admin. Code §3901-1-54(E) and in violation thereof, Allstate repeatedly misrepresented Policy provisions to the Messers.

47. As set forth in Ohio Admin. Code §3901-1-54(G) and in violation thereof, Allstate engaged in dilatory claims handling and refused to pay the full amount of the claim thereby compelling its insured to file suit to recover that which is otherwise owed.

48. Allstate's violation of the Ohio Administrative Code's provision for unfair claims settlement practices, as set forth, though not limited, herein, constitutes bad faith claims handling.

49. Due to Allstate's bad faith, the Messers have been damaged in an amount in excess of $25,000 with the exact amount to be proven at trial.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

**WHEREFORE,** The Messers demand judgment against Allstate for the following relief:

A.      Regarding Claim One: judgment in favor of the Messers and against Allstate and damages in excess of $25,000, plus interest at the statutory rate of interest, with the exact amount to be determined at trial;

B.      Regarding Claim Two: declaratory judgment in favor of the Messers and against Allstate as described herein.

C.      Regarding Claim Three: judgment in favor of the Messers and against Allstate and damages in excess $25,000, plus interest at the statutory rate of interest, with the exact amount to be determined at trial.

D.      Such other legal and equitable relief to which the Messers may be entitled in law or in equity, including, but not limited to, costs of the action and attorney's' fees in an amount to be determined.

Respectfully submitted,

CARLILE PATCHEN & MURPHY LLP

By: _____

Matthew S. Brown (0077687)
950 Goodale Boulevard, Suite 200
Columbus, Ohio 43212
Tele:   (614) 228-6135
Fax:    (614) 221-0216
Email:  mbrown@cpmlaw.com
*Attorneys for Plaintiffs*
*Mark and Jennifer Messer*

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues presented herein.

_____

Matthew S. Brown (0077687)

13

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL



Claim# _____ 0637058124 _____

<div style="float:right; border:3px solid black; padding:10px;">
**EXHIBIT**

**A**
</div>

To Whom It May Concern:

I, _Nimbajirao Patil_, employee of Allstate Insurance Company Irving, Texas,

do certify that the enclosed is a copy of policy and or declaration page for the above

claim number, showing the coverages that were on the policy at the time of loss

of _____ 08/14/2021 _____.


*Nimbajirao Patil*
_____
Claim Support


State of Texas, County of Dallas

On this _____ 15th _____ day of _____ October _____ 2021, before me personally

appeared _____ Nimbajirao Patil _____ to me known to be the person who executed the

foregoing instrument and acknowledged that he/she executed the same as a free act

and deed.

OLIVIA . LEACH
Notary Public, State of Texas
Comm. Expires 01-15-2024
Notary ID 132316117

*Olivia Leach*
_____
Notary Public



You're in good hands.

Victor Gray Ins Agy
7324 Kingsgate Way C
West Chester OH 45069

Information as of July 12, 2021

Policyholder(s)                                    Page **1** of 2
**Mark Messer, Jennifer Messer**

Policy number
**826 041 380**

Your Allstate agency is
**Victor Gray Ins Agy**
(513) 755-5550
VICTORGRAY5@ALLSTATE.COM

MARK MESSER
25 W ORCHARD AVE
LEBANON OH 45036-2107

## We're Confirming Your Policy Change

Thank you for the opportunity to help take care of your insurance needs. We want to let you know that we've made the change(s) you requested to your policy.

Please look over all the information in this mailing. Inside you'll also find a guide to what's in this package and answers to some common questions.

### What has changed?

The enclosed Amended Policy Declarations provides a detailed list of the coverages, coverage limits and coverage costs for your House & Home policy.  It also shows the following changes to your policy:

1st Mortgage information has been changed.

The change took effect on 07/13/2021.

### How to contact us

Give your Allstate Agent a call at (513) 755-5550 if you have any questions. It's our job to make sure you're in good hands.

Sincerely,

Julie Parsons
President, Allstate Vehicle and Property Insurance Company

EP113-1



EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

Policy number: **826 041 380**
Policy effective date: April 30, 2021

## Your Insurance Coverage Checklist

We're happy to have you as an Allstate customer! This checklist outlines what's in this package and provides answers to some basic questions, as well as any "next steps" you may need to take.

☐ **What's in this package?**
See the guide below for the documents that are included. **Next steps:** review your *Policy Declarations* to confirm you have the coverages, coverage limits, premiums and savings that you requested and expected. Read any *Endorsements* or *Important Notices* to learn about new policy changes, topics of special interest, as well as required communications. Keep all of these documents with your other important insurance papers.

☐ **Am I getting all the discounts I should?**
Confirm with your Allstate Agent that you're benefiting from all the discounts you're eligible to receive.

☐ **What about my bill?**
Unless you've already paid your premium in full, we'll send your bill separately. **Next steps:** please pay the minimum amount by the due date listed on it.

You can also pay your bill online at Allstate.com/support or through the Allstate mobile app. If you're enrolled in the Allstate® Easy Pay Plan, we'll send you a statement detailing your payment withdrawal schedule. Para español, llamar al 1-800-979-4285.

☐ **What if I have questions?**
Visit Allstate.com/support to browse our list of frequently asked questions and find information regarding billing or policy documents. You can also create an online account to access and manage your policies. Para español, llamar al 1-800-979-4285.

## A guide to your amended package







**Policy Declarations***
The Policy Declarations lists policy details, such as your property details and coverages.

**Important Notices**
We use these notices to call attention to particularly important coverages, policy changes and discounts.

**Insurance Made Simple**
Insurance seem complicated? Our online guides explain coverage terms and features:
www.allstate.com/madesimple
Espanol.allstate.com/facildeentender

* ***To make it easier to see where you may have gaps in your protection, we've highlighted any coverages you do not have in the Coverage Detail section in the enclosed Policy Declarations.***

064 070 034
210712500002207
PROR07OH20210712233849DIA-000089-001-0-00-00

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

# Amended House & Home Policy Declarations

Your policy effective date is April 30, 2021

 **Allstate**
You're in good hands.

## Total Premium for the Policy Period

| | |
|---|---|
| Premium for property insured | $877.25 |
| **Total** | **$877.25** |

## Discounts (included in your total premium)

| | | | |
|---|---|---|---|
| Protective Device | **$31.21** | Multiple Policy | **$293.81** |
| Claim Free | **$133.86** | Home Buyer | **$9.47** |
| Loyalty | **$81.88** | Responsible Payment | **$284.62** |
| **Total discount savings** | | | **$834.85** |

## Insured property details*

Please review and verify the information regarding your insured property. Please refer to the Important Notice (X73182-1) for additional coverage information. Contact us if you have any changes.

**Location of property insured:** 25 W Orchard Ave, Lebanon, OH 45036-2107

**Dwelling Style:**
Built in 1900; 1 family; 2289 sq. ft.; 2 stories

**Foundation:**
Below grade basement, 50%          Slab at grade, 50%

**Attached structure:**
One 1-car carport

**Interior details:**
One builders grade kitchen          One single fireplace
Two builders grade full baths       One softwood straight staircase

**Exterior wall type:**
100% aluminum siding

**Interior wall partition:**
100% drywall

**Heating and cooling:**
Average cost heat & central air
conditioning, 100%

**Additional details:**
Standard wood sash with glass, 100%   Interior wall height - 8 ft, 100%
Two exterior wood doors

**Fire protection details:**
Fire department subscription - no     1 mile to fire department

**Roof surface material type:**

*(continued)*

Information as of July 12, 2021

## Summary

Named Insured(s)
**Mark Messer, Jennifer Messer**
Mailing address
**25 W Orchard Ave**
**Lebanon OH 45036-2107**
Policy number
**826 041 380**

Your policy provided by
**Allstate Vehicle and Property Insurance Company**
Policy period
Beginning **April 30, 2021** through **April 30, 2022** at 12:01 a.m. standard time

Your Allstate agency is
**Victor Gray Ins Agy**
7324 Kingsgate Way C
West Chester OH 45069
(513) 755-5550
VICTORGRAY5@ALLSTATE.COM

**Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.**

OHO70AMD



EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

Amended House & Home Policy Declarations

Policy number: **826 041 380**
Policy effective date:     April 30, 2021

## Insured property details* (continued)

Composition
• 100% asphalt / fiberglass shingle

**Roof details:**
Predominant roof type: Composition          Age of roof - 3 years
Roof geometry - Gable

**Mortgagee**
1ST NATIONAL BANK
P O Box 119, Lebanon, OH 45036-0119
Loan number: 61115880

**Additional Interested Party - None**

*This is a partial list of property details. If the interior of your property includes custom
construction, finishes, buildup, specialties or systems, please contact your Allstate
representative for a complete description of additional property details.*

## Coverage detail for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling Protection | $289,381 | • $1,000 Windstorm and Hail<br>• $1,000 All other perils |
| Other Structures Protection | $14,470 | • $1,000 Windstorm and Hail<br>• $1,000 All other perils |
| Personal Property Protection | $217,036 | • $1,000 Windstorm and Hail<br>• $1,000 All other perils |
| Additional Living Expense | Up to 24 months not to exceed $115,753 | |
| Family Liability Protection | $300,000 each occurrence | |
| Guest Medical Protection | $5,000 each person | |
| Building Codes | **Not purchased*** | |
| Building Structure Reimbursement Extended Limits | **Not purchased*** | |
| Roof Surfaces Extended Coverage | Included | |
| Water Back-Up | $5,000 | • $500 Water Back-Up |

▶ *Other Coverages Not Purchased:*

- Additional Fire Department Charges*
- Building Materials Theft*
- Dwelling in the Course of Construction*
- Electronic Data Recovery*
- Extended Coverage on Cameras*
- Extended Coverage on Jewelry, Watches and Furs*

- Extended Coverage on Musical Instruments*
- Extended Coverage on Sports Equipment*
- Extended Premises*
- Fair Rental Income*
- Golf Cart*
- Green Improvement*
- Home Day Care*

- Identity Theft Expenses*
- Increased Coverage on Business Property*
- Increased Coverage on Theft of Silverware*
- Loss Assessments*
- Mine Subsidence*
- Secondary Residence*
- Select Value*
- Yard and Garden*

*(continued)*

OH070AMD

064 070 034
21O712S000207
PROR07OH20210712233849OIA-000089-002-0-00-00

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

Amended House & Home Policy Declarations
Policy number: **826 041 380**
Policy effective date: April 30, 2021

Page **3** of 3

 

*You're in good hands.*

\* *This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Scheduled Personal Property Coverage

*Your policy does not include Scheduled Personal Property Coverage. This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Your policy documents

Your House & Home policy consists of the Policy Declarations, any Policy Declarations Addendum, and the following documents. Please keep them together.

- House & Home Policy – AVP81
- Amendatory Endorsement – AVP381
- Windstorm and Hail Deductible Endorsement – AVP82
- Water Back–Up Endorsement – AVP258
- Roof Surfaces Extended Coverage Endorsement – AVP42
- Depreciation Amendatory Endorsement – AP4970
- Ohio Amendatory Endorsement – AVP103-3

## Important payment and other information

Here is some additional, helpful information related to your coverage and paying your bill:

▶ The Property Insurance Adjustment condition applies using the Marshall Swift Boeckh Publications building cost index.

▶ Do not pay. Mortgagee has been billed.

**Allstate Vehicle and Property Insurance Company's** Secretary and President have signed this policy with legal authority at Northbrook, Illinois.

*Julie Parsons*

Julie Parsons
President

*Susan L Lees*

Susan L. Lees
Secretary

OH070AMD



EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

## Important notices

Policy number: **826 041 380**

Policy effective date: April 30, 2021

# Your Estimated Home Replacement Cost

Allstate has determined that the estimated cost to replace your home is: <u>$289,381.</u>

We based your estimated cost on information provided by you and selected data that was available to us, which is described in the "Insured property details" section of your Policy Declarations. Please review all the information in this section to ensure the accuracy of the information used to determine the estimated replacement cost of your home.

The enclosed Policy Declarations shows the limit of liability applicable to Dwelling Protection-Coverage A of your homeowners insurance policy. The estimated replacement cost of your home is the minimum amount for which we will insure your home.

The decision regarding the limit applicable to your Dwelling Protection-Coverage A is your decision to make, as long as, at a minimum, your limit equals the estimated replacement cost as determined by Allstate and does not exceed maximum coverage limitations established by Allstate.

It is important to keep in mind that your Coverage A limits reflect a replacement cost that is only an estimate based on data that was available to us when we made this estimate (this information is described in the "Insured property details" section of your Policy Declarations). The actual amount it will cost to replace your home cannot be known until after a covered total loss has occurred. Please keep in mind that we do not guarantee the adequacy of the estimate to cover any future loss(es).

## How Is the Replacement Cost Estimated?

Many factors can affect the cost to replace your home, including its age, size, and type of construction. For example, the replacement cost uses construction data, such as labor and materials, that are available to us when we made this estimate. This estimate is also based on characteristics of the home, which include information that you provided to us. You might have chosen to insure your home for a higher amount than the estimated replacement cost shown above.

## Note to Customers Renewing Their Policy

The estimated replacement cost for your home may have changed since the last time we communicated this information to you. This is because, at renewal, Allstate uses the home characteristics that you have provided to us to recalculate and update the estimated replacement cost. Using updated labor and material rates for your zip code, Allstate takes the home characteristics you have provided and determines the updated estimated replacement cost. The information about your

home's characteristics is provided in the "Insured property details" section of your Policy Declarations.

**Please note: Your Dwelling information is used to estimate your home replacement cost. It's important to review and update this information so we're using the most accurate details to estimate your home's replacement value.**

If the information about your home shown in your Policy Declarations requires any change or if you have any questions or concerns about the information contained in this Important Notice, please contact your Allstate representative, or call us at 1-800-ALLSTATE.

**X73182-1**

064 070 034
21071250O0207
PROR07OH20210712233849O1A-000O089-003-0-00-00

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

## Amendatory Endorsement <En> AP4970

Throughout the policy, when determining the actual cash value of the loss, the costs necessary to repair, rebuild or replace the destroyed, damaged or stolen property may be depreciated. Such costs subject to depreciation may include, but are not limited to, goods, materials, equipment, labor, overhead and profit, taxes, fees or similar charges.

All other policy terms and conditions apply.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

## Policy Endorsement

Policy number:
Policy effective date:
Your Allstate agency is

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with*
*your policy.*

## Roof Surfaces Extended Coverage Endorsement – AVP42

In **Section I Conditions**, item 5, **How We Pay For A Loss**, provision c) (titled "Building Structure Reimbursement.") the fifth paragraph is replaced by the following:

Building Structure Reimbursement will not apply to:
1) property covered under **Personal Property Protection–Coverage C**;
2) property covered under **Other Structures Protection– Coverage B** that is not a building structure;
3) wall-to-wall carpeting, fences, awnings and outdoor antennas, whether or not fastened to a **building structure**; or
4) land.

All other policy terms and conditions apply.

**EXHIBIT C**
**TO ALLSTATE'S NOTICE OF REMOVAL**



**ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY**

# House & Home
# Policy

AVP81



**Allstate Vehicle and Property Insurance Company**
**The Company Named in the Policy Declarations**
A Stock Company---Home Office: Northbrook, Illinois 60062

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

# Table of Contents

Agreements We Make With You ................................................. 4

**General** ................................................................................. 4
Definitions Used In This Policy ................................................. 4
Insuring Agreement ................................................................. 5
Conformity To State Statutes ................................................... 5
Coverage Changes ................................................................. 5
Policy Transfer ....................................................................... 6
Continued Coverage After Your Death ....................................... 6
Cancellation............................................................................ 6
Misrepresentation, Fraud Or Concealment .................................. 6
What Law Will Apply ................................................................ 6
Where Lawsuits May Be Brought............................................... 6
Action Against Us ................................................................... 7
Arbitration ............................................................................. 7

**Section I—Your Property** .................................................... 7

**Dwelling Protection-Coverage A**........................................... 7
Property We Cover Under Coverage A ....................................... 7
Property We Do Not Cover Under Coverage A ............................. 7

**Other Structures Protection-Coverage B** ............................. 7
Property We Cover Under Coverage B ....................................... 7
Property We Do Not Cover Under Coverage B............................. 7
Losses We Cover Under Coverages A and B................................ 8
Losses We Do Not Cover Under Coverages A and B...................... 8

**Personal Property Protection-Coverage C** ............................ 11
Property We Cover Under Coverage C ....................................... 11
Limitations On Certain Personal Property ................................... 11
Property We Do Not Cover Under Coverage C ............................. 12
Losses We Cover Under Coverage C ..........................................13
Losses We Do Not Cover Under Coverage C ............................... 14

**Section I Additional Protection** ........................................... 16
Additional Living Expense......................................................... 16
Civil, Governmental And Military Authorities.............................. 17
Debris Removal....................................................................... 17
Emergency Removal Of Property ............................................... 17
Fire Department Charges ......................................................... 17
Temporary Repairs After A Loss............................................... 17
Trees, Shrubs, Plants And Lawns.............................................. 17
Power Interruption .................................................................. 17
Arson Reward.......................................................................... 17
Collapse.................................................................................. 18
Land....................................................................................... 18
Lock Replacement ................................................................... 18

**Section I Conditions**..............................................................18
Deductible .............................................................................. 18
Insurable Interest And Our Liability........................................... 18
What You Must Do After A Loss................................................. 18
Our Settlement Options ............................................................ 19
How We Pay For A Loss............................................................ 19
Our Settlement Of Loss............................................................ 21
Appraisal................................................................................ 21
Abandoned Property................................................................. 21
Permission Granted To You ...................................................... 21
Our Rights To Recover Payment................................................ 21
Our Rights To Obtain Salvage................................................... 21
Action Against Us .................................................................... 22
Loss To A Pair Or Set .............................................................. 22
Glass Replacement................................................................... 22
No Benefit To Bailee................................................................ 22
Other Insurance ...................................................................... 22
Property Insurance Adjustment ................................................ 22
Mortgagee............................................................................... 22
Mold, Fungus, Wet Rot And Dry Rot Remediation
   As A Direct Result Of A Covered Water Loss ..................... 22

**Section II—Family Liability And Guest
        Medical Protection** ............................................. 23

**Family Liability Protection-Coverage X** ............................... 23
Losses We Cover Under Coverage X .......................................... 23
Losses We Do Not Cover Under Coverage X ............................... 23

**Guest Medical Protection-Coverage Y**.................................. 25
Losses We Cover Under Coverage Y .......................................... 25
Losses We Do Not Cover Under Coverage Y ............................... 25

**Section II Additional Protection** .......................................... 27
Claim Expenses ....................................................................... 27
Emergency First Aid ................................................................ 27
Damage To Property Of Others................................................. 27

**Section II Conditions** ........................................................... 27
What You Must Do After A Loss................................................. 27
What An Injured Person Must Do—Guest Medical
   Protection-Coverage Y .................................................. 27
Our Payment Of Loss—Guest Medical Protection-
   Coverage Y ................................................................... 28
Our Limits Of Liability.............................................................. 28
Bankruptcy ............................................................................. 28
Our Rights To Recover Payment—Family Liability
   Protection-Coverage X................................................... 28
Action Against Us.................................................................... 28
Other Insurance—Family Liability Protection-Coverage X .. 28

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

House & Home Policy


You're in good hands.

**Section III—Optional Protection**........................................28

**Optional Coverages**........................................................28
Building Codes–Coverage BC........................................28
Increased Coverage On Business Property–Coverage BP .....28
Fire Department Charges–Coverage F.........................29
Loss Assessments–Coverage G ..................................29
Extended Coverage On Jewelry, Watches And Furs–
    Coverage J...........................................................29
Increased Coverage On Theft Of Silverware–
    Coverage ST........................................................29

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

## Agreements We Make With You

**We** make the following agreements with **you**:

# General

## Definitions Used In This Policy

Throughout this policy, when the following words appear in bold type, they are defined as follows:

1. **Bodily injury**—means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
   a) any venereal disease;
   b) herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

   In addition, **bodily injury** does not include any symptom, effect, condition, disease or illness resulting in any manner from:
   a) lead in any form;
   b) asbestos in any form;
   c) radon in any form; or
   d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**.

2. **Building structure**—means a structure with walls and a roof.

3. **Business**—means:
   a) any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**.

      However, the mutual exchange of home day care services is not considered a **business**;

   b) the rental or holding for rental of property by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
      1) it is rented occasionally for residential purposes;
      2) a portion is rented to roomers or boarders, provided not more than two roomers or

boarders reside on the **residence premises** at any one time; or
      3) a portion is rented as a private garage.

4. **Dwelling**—means the single-family **building structure**, identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence.

5. **Insured person(s)**—means **you** and, if a resident of **your** household:
   a) any relative; and
   b) any person under the age of 21 in **your** care.

   Under **Family Liability Protection-Coverage X** and **Guest Medical Protection-Coverage Y**, "insured person" also means:
   a) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person**. **We** do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner.
   b) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**.

6. **Insured premises**—means:
   a) the **residence premises**; and
   b) under **Section II** only:
      1) the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquire for **your** use as a private residence while this policy is in effect;
      2) any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
      3) cemetery plots or burial vaults owned by an **insured person**;
      4) land owned by or rented to an **insured person** where a single-family **dwelling** is being built as that person's residence;
      5) any premises used by an **insured person** in connection with the **residence premises**; and
      6) any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

7. **Occurrence**—means an accident, including continuous or repeated exposure to substantially the same general

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

House & Home Policy

 **Allstate.**
You're in good hands.

harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

8. **Property damage**—means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

9. **Residence employee**—means an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

10. **Residence premises**—means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

11. **Roof surface**—means the roof surface material type (slate, composition, wood, tile, metal, all other roof surface material types) of a **building structure** or other structure covered under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B** and all other roofing components, including, but not limited to:
    a) flashing, caps, vents, drip edges, and ice shields;
    b) sheeting, felt and membranes;
    c) modified bitumen, bitumen, rubber, built-up and sprayed polyurethane foam roofing;
    d) foam inserts and elastomeric coating;
    e) finials, eave and gable trim and snow guards;
    f) battens, counter battens, bird stops, gravel stops; and
    g) coatings, adhesives, adherents and other finishing materials for roof surface materials and all other roofing components.

12. **We**, **us**, or **our**—means the company named on the Policy Declarations.

13. **Windstorm**—means wind with or without precipitation.

14. **You** or **your**—means the person listed under Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse.

## Insuring Agreement

In reliance on the information **you** have given **us**, **we** agree to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The Policy Period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

This policy imposes joint obligations on the Named Insured(s) listed on the Policy Declarations and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

This policy imposes joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

## Conformity To State Statutes

When the policy provisions conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

## Coverage Changes

When **we** broaden coverage during the policy period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy are based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, or if this information is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current policy period will be used to calculate any change in **your** premium.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

## Policy Transfer
**You** may not transfer this policy to another person without **our** written consent.

## Continued Coverage After Your Death
If **you** die, coverage will continue until the end of the current policy period for:
1. **your** legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.

2. an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

## Cancellation
**Your** Right to Cancel:
**You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:
**We** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, **we** may cancel this policy for any reason by giving **you** at least 10 days notice before the cancellation takes effect.

When the policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:
1. nonpayment of premium;

2. the policy was obtained by misrepresentation, fraud or concealment of material facts;

3. material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or

4. there has been a substantial change or increase in hazard in the risk **we** originally accepted.

If the cancellation is for nonpayment of premium, **we** will give **you** at least 10 days notice. If the cancellation is for any of the other reasons, **we** will give **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice.

**Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:
**We** have the right not to renew or continue the policy beyond the current policy period. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 30 days before the end of the policy period. **Our** mailing the notice of nonrenewal to **you** will be deemed proof of notice.

## Misrepresentation, Fraud Or Concealment
**We** may void this policy if it was obtained by misrepresentation, fraud or concealment of material facts. If **we** determine that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

## What Law Will Apply
This policy is issued in accordance with the laws of the state in which the **residence premises** is located and covers property or risks principally located in that state. Subject to the following paragraph, the laws of the state in which the **residence premises** is located shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy, happens outside the state in which the **residence premises** is located, claims or disputes regarding that covered loss to property, or other covered **occurrence**, may be governed by the laws of the jurisdiction in which that covered loss to property or other covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

## Where Lawsuits May Be Brought
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

House & Home Policy



in the state in which the **residence premises** is located, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy, happens outside the state in which the **residence premises** is located, lawsuits regarding that covered loss to property, or other covered **occurrence**, may also be brought in the judicial district where that covered loss to property or other covered **occurrence** happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

### Action Against Us
No one may bring an action against **us** unless there has been full compliance with all policy terms.

Any action against **us** to which neither the **Action Against Us** provision located in **Section I Conditions** nor the **Action Against Us** provision located in **Section II Conditions** applies must be commenced within one year of the date the cause of action accrues.

If an action is brought asserting claims relating to the existence or amount of coverage, or the amount of loss for which coverage is sought, under different coverages of this policy, the claims relating to each coverage shall be treated as if they were separate actions for the purpose of the time limit to commence action.

### Arbitration
Any claim or dispute in any way related to this policy, by an **insured person** against **us** or **us** against an **insured person**, may be resolved by arbitration only upon mutual consent of the parties. Arbitration pursuant to this provision shall be subject to the following:
1. no arbitrator shall have the authority to award punitive damages or attorney's fees;

2. neither of the parties shall be entitled to arbitrate any claims or disputes in a representative capacity or as a member of a class; and

3. no arbitrator shall have the authority, without the mutual consent of the parties, to consolidate claims or disputes in arbitration.

## Section I—Your Property

### Dwelling Protection–Coverage A

**Property We Cover Under Coverage A:**
1. **Your dwelling**, including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3. Wall-to-wall carpeting fastened to **your dwelling**.

**Property We Do Not Cover Under Coverage A:**
1. Any structure, including fences, or other property covered under **Other Structures Protection–Coverage B**.

2. Land.

3. Satellite dish antennas and their systems, whether or not attached to **your dwelling**.

### Other Structures Protection–Coverage B

**Property We Cover Under Coverage B:**
1. Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2. Structures at the address shown on the Policy Declarations connected to **your dwelling** by only a fence, utility line, or similar connection.

3. Construction materials and supplies at the **residence premises** for use in connection with structures other than **your dwelling**.

4. Wall-to-wall carpeting fastened to **building structures**, other than **your dwelling**, at the address shown on the Policy Declarations.

**Property We Do Not Cover Under Coverage B:**
1. Structures used in whole or in part for **business** purposes.

2. Any structure or other property covered under **Dwelling Protection–Coverage A**.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

3.  Land.

4.  Construction materials and supplies at the **residence premises** for use in connection with the **dwelling**.

5.  Satellite dish antennas and their systems, whether or not attached to **building structures**.

## Losses We Cover Under Coverages A and B:

**We** will cover sudden and accidental direct physical loss to property described in **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** except as limited or excluded in this policy.

## Losses We Do Not Cover Under Coverages A and B:

A.  Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** of this policy, **we** do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; or c) whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

1.  Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2.  Water or any other substance that backs up through sewers or drains.

3.  Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4.  Water or any other substance on or below the surface of the ground. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

**We** do cover sudden and accidental direct physical loss caused by fire or explosion resulting from items 1 through 4 listed above.

5.  Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   **We** do cover sudden and accidental direct physical loss caused by fire or explosion resulting from earth movement.

6.  Actions taken by civil, governmental or military authorities:
    a)  to enforce any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**; or
    b)  requesting, demanding or ordering that an **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of, any loss or potential loss at the **residence premises**.

   However, **we** will cover sudden and accidental direct physical loss caused by actions of civil, governmental or military authority to prevent the spread of fire.

7.  Nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss which consists of, is caused by, or would not have occurred but for, the nuclear hazard is not considered loss by fire, explosion or smoke.

8.  a)  War, whether declared or undeclared;
    b)  warlike acts;
    c)  invasion;
    d)  insurrection;
    e)  rebellion;
    f)  revolution;
    g)  civil war;
    h)  usurped power;

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

House & Home Policy



**Allstate.**
You're in good hands.

i)   destruction for a military purpose; or

j)   action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

9.  Soil conditions, including, but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

10.  Vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

However, **we** will not apply this exclusion to sudden and accidental direct physical loss which consists of, is caused by, or would not have occurred but for:

a)   a fire or an explosion at **your residence premises**;

b)   smoke or soot resulting from food preparation at **your residence premises**;

c)   the malfunction of a heating or air conditioning system or a household appliance at **your residence premises**;

d)   smoke, soot or fumes originating away from **your residence premises**, provided the smoke, soot or fumes:

1)   were not from industrial, governmental or military operations, agricultural smudging, or the manufacturing of any controlled substance; and

2)   did not result from nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these;

e)   spray, overspray, spatter, or spillage, by a person located on the ground at the **residence premises** or in or upon a structure **we** cover at the **residence premises**, of lawfully possessed, commercially available supplies manufactured or produced for use in food preparation, personal hygiene, or for cleaning or maintaining a residential property or personal property;

f)   spray, overspray, spatter or spillage of lawfully possessed, commercially available supplies by a person performing cleaning or other maintenance services at a premises located within 500 feet of the **residence premises**;

g)   spillage or release at **your residence premises** of gas or oil, in any form, used to prepare foods at **your residence premises**, or to heat the **dwelling**

or other **building structures** at **your residence premises**, when such spillage or release results in a fire or an explosion at **your residence premises**; or

h)   fuel, oil or other fluids necessary to operate a motorized land vehicle if, at the time of the loss, such fuel, oil or other fluids are being used solely for the purpose of operating a motorized land vehicle and the loss results from a collision, at the **residence premises**, of the motorized land vehicle with property **we** cover under **Dwelling Protection-Coverage A** or **Other Structures Protection-Coverage B**.

11.  Lack of utility services at the **residence premises**, meaning loss or interruption of, lack or loss of access to, or unavailability of, one or more utility services for the **residence premises**, including, but not limited to, electric, natural gas or other fuels, water, sanitation, sewer, cable or communication services, unless the lack of utility services results solely from a sudden and accidental direct physical loss to property located at the **residence premises** caused by an event, peril or condition not excluded by this policy.

When the lack of utility services results in freezing of:

a)   plumbing, automatic fire protective sprinkler systems, heating or air conditioning systems;

b)   household appliances; or

c)   swimming pools, hot tubs or spas located within a heated portion of the **dwelling**, or their filtration and circulation systems located within a heated portion of the **dwelling**;

or when the lack of utility services results in discharge, leakage or overflow from within a), b) or c) above caused by freezing, **we** do cover sudden and accidental direct physical loss caused by the freezing if **you** used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems, appliances, swimming pools, hot tubs, spas and their filtration and circulation systems instead of maintaining heat in the **building structure**.

12.  Inability of an **insured person** to use, access or remain at the **residence premises** due to an actual,

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

impending or expected lack, impassability or unavailability of any reasonable means of ingress to or egress from the **residence premises**, including, but not limited to, roads, highways, causeways, sidewalks, paths, rails, bridges, tunnels or waterways.

For purposes of this exclusion, a particular means of ingress or egress will be considered impassable or unavailable if:
a) it cannot be safely traveled due to physical damage or destruction of that means of ingress or egress; or
b) it cannot be traveled due to actions by others, including, but not limited to, civil, governmental or military authorities which prohibit or restrict travel using that means of ingress or egress.

13. Seizure, confiscation or quarantine by civil, governmental or military authority.

    **We** will cover sudden and accidental direct physical loss caused by actions of civil, governmental or military authority to prevent the spread of fire.

14. The manufacturing of any controlled substance.

15. Weather Conditions that contribute in any way with an event, peril or condition excluded under **Losses We Do Not Cover Under Coverages A and B** to produce a loss.

B. Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** of this policy, **we** do not cover any loss consisting of or caused by mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including, but not limited to, a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.**

C. When loss is not excluded under paragraph A or paragraph B of **Losses We Do Not Cover Under Coverages A and B**, and there are two or more causes

of loss to the covered property, **we** do not cover the loss if the predominant cause(s) of loss is (are) excluded under paragraph D, immediately below.

D. Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** of this policy, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.
1. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

2. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

3. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
    a) may be reasonably expected to result from such acts; or
    b) is the intended result of such acts.

    This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime.

4. Collapse, except as specifically provided in **Section I Additional Protection** under item 10, "Collapse."

5. a) Wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
    b) mechanical breakdown;
    c) growth of trees, shrubs, plants or lawns, regardless of whether such growth is above or below the surface of the ground;
    d) rust or other corrosion;
    e) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; or
    f) insects, rodents, birds or domestic animals. **We** do cover the breakage of glass or safety glazing materials caused by birds.

    If any of a) through f) causes the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system,

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

House & Home Policy


You're in good hands.

a household appliance or an automatic fire protective sprinkler system within **your dwelling**, **we** cover the direct physical damage caused by the water or steam.

If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of **your dwelling** necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water or steam escaped.

6. Freezing of:
   a) plumbing, automatic fire protective sprinkler systems, heating or air conditioning systems;
   b) household appliances; or
   c) swimming pools, hot tubs or spas located within a heated portion of the **dwelling**, or their filtration and circulation systems located within a heated portion of the **dwelling**;

   or discharge, leakage or overflow from within a), b) or c) above, caused by freezing, while the **building structure** is vacant, unoccupied or being constructed, unless **you** have used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems, appliances, swimming pools, hot tubs, spas and their filtration and circulation systems instead of maintaining heat in the **building structure**.

7. Freezing, thawing, pressure or weight of water, snow or ice, whether or not driven by wind. This exclusion applies to fences, pavements, patios, foundations, retaining walls, bulkheads, piers, wharves and docks. This exclusion also applies to swimming pools, hot tubs, spas, and their filtration and circulation systems, which are not located within a heated portion of the **dwelling**.

8. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:
   a) from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a domestic appliance; or
   b) from, within or around any plumbing fixtures, including, but not limited to, shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

9. Theft from **your residence premises** while **your dwelling** is under construction, or of materials and supplies for use in construction, until **your dwelling** is completed and occupied.

10. Vandalism or malicious mischief if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

11. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance;

    of property whether on or off the **residence premises** by any person or organization.

## Personal Property Protection–Coverage C

### Property We Cover Under Coverage C:
1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from the **residence premises**, coverage is limited to 10% of **Personal Property Protection–Coverage C**.

2. At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

### Limitations On Certain Personal Property:
Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Personal Property Protection–Coverage C**. The total amount of coverage for each group in any one loss is as follows:
1. $ 200 — Property used or intended for use in a **business** while the property is away from the **residence premises**. This does not

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

include electronic data processing equipment or the recording or storage media used with that equipment.

2. $ 500 — Theft of any recording or storage media while such property is away from the **residence premises**, whether or not it is used with electronic data processing equipment or in a **business**. Recording or storage media includes, but is not limited to:
   a) tapes;
   b) CDs, DVDs and other discs;
   c) records;
   d) disks;
   e) reels;
   f) cassettes;
   g) cartridges; or
   h) programs.

3. $ 1,000 — Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4. $ 1,000 — Trading cards, subject to a maximum amount of $250 per card.

5. $ 1,000 — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts, and motors.

6. $ 1,000 — Trailers not used with watercraft.

7. $ 1,500 — Motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

8. $ 2,000 — Theft of firearms, their related equipment, and accessories.

9. $ 2,500 — Theft of goldware, silverware, pewterware and platinumware.

10. $ 5,000 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, pewter other than pewterware, platinum other than platinumware, and furs, including

any item containing fur which represents its principal value, subject to a maximum amount of $1,000 per item.

11. $10,000 — Theft of tools and their accessories.

12. $10,000 — Motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled and not licensed for use on public roads.

**Property We Do Not Cover Under Coverage C:**

1. Personal property specifically described and insured by this or any other insurance.

2. Animals.

3. Motorized land vehicles, including, but not limited to, any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the disabled, or used solely for the service of the **insured premises**, and not licensed for use on public roads.

4. Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5. Property of roomers, boarders or tenants not related to **you**.

6. Property located away from the **residence premises** and rented or held for rental to others.

7. Satellite dish antennas and their systems.

8. Money, bullion, bank notes, coins and other numismatic property, scrip, stored value cards, and smart cards.

9. Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, checks, cashier's checks, traveler's checks, passports, securities, tickets, and stamps, including philatelic property.

10. Manuscripts, including documents stored on electronic media.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

House & Home Policy



**Allstate.**
You're in good hands.

## Losses We Cover Under Coverage C:

**We** will cover sudden and accidental direct physical loss to the property described in **Personal Property Protection- Coverage C** caused by the following, except as limited or excluded in this policy:

1. Fire or lightning.

2. **Windstorm** or hail.

   **We** do not cover:
   a) loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;
   b) loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure**. However, **we** do cover canoes and rowboats on the **residence premises**.

3. Explosion.

4. Riot or civil commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke.

8. Vandalism and malicious mischief.

   **We** do not cover vandalism or malicious mischief if **your dwelling** has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

9. Falling objects.

   **We** do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure**.

10. Weight of ice, snow or sleet which causes damage to personal property in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Artificially generated electrical current to electronics, electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protective sprinkler system, or from a household appliance due to accidental discharge or overflow.

    **We** do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system, an automatic fire protective sprinkler system or a household appliance.

    **We** do not cover loss at the **residence premises** under items 12, 13, and 14, immediately above, which is caused by freezing while the **building structure** is vacant, unoccupied or under construction, or when freezing results from a lack of utility services at the **residence premises** to which item A.10 in **Losses We Do Not Cover Under Coverage C** applies, unless **you** have used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems and appliances instead of maintaining heat in the **building structure**.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

    **We** do not cover:
    a) theft or attempted theft committed by an **insured person**;
    b) theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied;

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

c) theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;
d) theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**; or
e) theft from that part of the **residence premises** rented by **you** to other than an **insured person**.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

## Losses We Do Not Cover Under Coverage C:

A. Under **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; or c) whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

1. Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

**We** do cover sudden and accidental direct physical loss caused by fire or explosion resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

**We** do cover sudden and accidental direct physical loss caused by fire or explosion resulting from earth movement.

6. Actions taken by civil, governmental or military authorities:
a) to enforce any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**; or
b) requesting, demanding or ordering that an **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of, any loss or potential loss at the **residence premises**.

However, **we** will cover sudden and accidental direct physical loss caused by actions of civil, governmental or military authority to prevent the spread of fire.

7. Nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss which consists of, is caused by, or would not have occurred but for, the nuclear hazard is not considered loss by fire, explosion or smoke.

8. a) War, whether declared or undeclared;
b) warlike acts;
c) invasion;
d) insurrection;
e) rebellion;
f) revolution;
g) civil war;
h) usurped power;
i) destruction for a military purpose; or
j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

House & Home Policy

 **Allstate.**
You're in good hands.

9. Vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

   However, **we** will not apply this exclusion to sudden and accidental direct physical loss which consists of, is caused by, or would not have occurred but for:
   a) a fire or an explosion at **your residence premises**;
   b) smoke or soot resulting from food preparation at **your residence premises**;
   c) the malfunction of a heating or air conditioning system or a household appliance at **your residence premises**;
   d) smoke, soot or fumes originating away from **your residence premises**, provided the smoke, soot or fumes:
      1) were not from industrial, governmental or military operations, agricultural smudging, or the manufacturing of any controlled substance; and
      2) did not result from nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these;
   e) spray, overspray, spatter, or spillage, by a person located on the ground at the **residence premises** or in or upon a structure **we** cover at the **residence premises**, of lawfully possessed, commercially available supplies manufactured or produced for use in food preparation, personal hygiene, or for cleaning or maintaining a residential property or personal property;
   f) spillage or release at **your residence premises** of gas or oil, in any form, used to prepare foods at **your residence premises**, or to heat the **dwelling** or other **building structures** at **your residence premises**, when such spillage or release results in a fire or an explosion at **your residence premises**; or
   g) fuel, oil or other fluids necessary to operate a motorized land vehicle if, at the time of the loss, such fuel, oil or other fluids are being used solely for the purpose of operating a motorized land vehicle and the loss results from a collision, at the **residence premises**, of the motorized land vehicle with property **we** cover under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**.

10. Lack of utility services at the **residence premises**, meaning loss or interruption of, lack or loss of access to, or unavailability of, one or more utility services for the **residence premises**, including, but not limited to, electric, natural gas or other fuels, water, sanitation, sewer, cable or communication services, unless the lack of utility services results solely from a sudden and accidental direct physical loss to property located at the **residence premises** caused by an event, peril or condition not excluded by this policy.

    When the lack of utility services results in freezing of:
    a) plumbing, automatic fire protective sprinkler system, heating or air conditioning systems; or
    b) household appliances;

    or when the lack of utility services results in discharge, leakage or overflow from within a) or b) above caused by freezing, **we** do cover sudden and accidental direct physical loss caused by the freezing if **you** used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems and appliances instead of maintaining heat in the **building structure**.

11. Inability of an **insured person** to use, access or retain personal property **we** cover under **Personal Property Protection–Coverage C** due to an actual, impending or expected lack, impassability or unavailability of any reasonable means of ingress to or egress from the **residence premises** or any other location where the property is located, including, but not limited to, roads, highways, causeways, sidewalks, paths, rails, bridges, tunnels or waterways.

    For purposes of this exclusion, a particular means of ingress or egress will be considered impassable or unavailable if:
    a) it cannot be safely traveled due to physical damage or destruction of that means of ingress or egress; or
    b) it cannot be traveled due to actions by others, including, but not limited to, civil, governmental or military authorities which prohibit or restrict travel using that means of ingress or egress.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

12. Weather Conditions that contribute in any way with an event, peril or condition excluded under **Losses We Do Not Cover Under Coverage C** to produce a loss.

B. Under **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss consisting of or caused by mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including, but not limited to, a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I Conditions**, **Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**.

C. When loss is not excluded under paragraph A or paragraph B of **Losses We Do Not Cover Under Coverage C**, and there are two or more causes of loss to the covered property, **we** do not cover the loss if the predominant cause(s) of loss is (are) excluded under paragraph D, immediately below.

D. Under **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the covered event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

1. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

2. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

3. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime.

4. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
   a) planning, zoning, development, surveying, siting;
   b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   c) materials used in repair, construction, renovation or remodeling; or
   d) maintenance;

   of property whether on or off the **residence premises** by any person or organization.

## Section I Additional Protection

1. **Additional Living Expense**
   **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**.

   Payment for additional living expense as a result of a covered loss under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** will be limited to the least of the following:
   a) the time period required to repair or replace the property **we** cover, using due diligence and dispatch;
   b) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
   c) 12 months.

   These periods of time are not limited by the termination of this policy.

   In no event shall **our** payment for additional living expenses exceed the Limit Of Liability shown on **your** Policy Declarations for Additional Living Expense.

   **We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

House & Home Policy



**Allstate**

You're in good hands.

No deductible applies to this protection.

2. **Civil, Governmental And Military Authorities**
**We** will pay the reasonable and necessary increase in living expenses for up to two weeks should civil, governmental or military authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by an event, peril or condition **we** insure against under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C**. However, payments for increase in living expenses due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**.

The two-week period of time referenced above is not limited by the termination of this policy.

No deductible applies to this protection.

3. **Debris Removal**
**We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover. If the loss to the covered property and the cost of debris removal are more than the Limit Of Liability shown on the Policy Declarations for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
**We** will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
**We** will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises**.

No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
**We** will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not

increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants And Lawns**
**We** will pay up to 5% of the Limit Of Liability shown on the Policy Declarations under **Dwelling Protection–Coverage A** for loss to trees, shrubs, plants and lawns at the address of the **residence premises**. **We** will not pay more than $500 for any one tree, shrub, or plant, including expenses incurred for removing debris. This coverage applies only to sudden and accidental direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, vandalism or malicious mischief, theft, or collapse of a **building structure** or any part of a **building structure**.

**We** will pay up to $500 for reasonable expenses **you** incur for the removal of debris of trees at the address of the **residence premises** for sudden and accidental direct physical loss caused by **windstorm**, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Dwelling Protection– Coverage A** or **Other Structures Protection–Coverage B**.

**We** do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

This coverage does not increase the **Dwelling Protection–Coverage A** limit of liability.

8. **Power Interruption**
**We** will pay up to $500 for loss to the contents of freezers and refrigerated units on the **residence premises** caused by the interruption of power which occurs off the **residence premises**. If a power interruption is known to an **insured person**, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

9. **Arson Reward**
**We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

10. **Collapse**
    **We** will cover at the **residence premises**:
    a)  the entire collapse of a covered **building structure**;
    b)  the entire collapse of part of a covered **building structure**; and
    c)  direct physical loss to covered property caused by a) or b) above.

    For coverage to apply, the collapse of a **building structure** specified in a) or b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
    a)  a loss **we** cover under **Section I, Personal Property Protection–Coverage C**;
    b)  weight of persons, animals, equipment or contents;
    c)  weight of rain, snow or ice which collects on a roof;
    d)  defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

    Collapse, as referenced herein, means the covered **building structure** or part of the covered **building structure** has actually fallen down or fallen into pieces unexpectedly and instantaneously. It does not include settling, cracking, shrinking, bulging, expansion, sagging, or bowing. Furthermore, collapse does not include or mean substantial structural impairment or imminent collapse.

    Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, fuel oil tank, septic tank, cistern or similar system, foundation, retaining wall, bulkhead, pier, wharf or dock is not included, unless the loss is a direct result of the collapse of a **building structure** or part of a **building structure** that is a sudden and accidental direct physical loss caused by one or more of the following:
    a)  a loss **we** cover under **Section I, Personal Property Protection–Coverage C**;
    b)  weight of persons, animals, equipment or contents;
    c)  weight of rain, snow or ice which collects on a roof; or
    d)  defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

    This coverage does not increase the limit of liability applying to the covered property.

11. **Land**
    If a sudden and accidental direct physical loss results in both a covered loss to the **dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, **we** will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the **dwelling** sustaining the covered loss.

    The **Section I, Losses We Do Not Cover Under Coverages A and B** reference to earth movement does not apply to the loss of land stability provided under this additional protection.

12. **Lock Replacement**
    When a key to a lock is stolen as part of a covered theft loss, **we** will pay, under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**, as applicable, up to $500 for the reasonable expenses **you** incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality.

    This coverage does not increase the limit of liability that applies to the covered property.

## Section I Conditions

1.  **Deductible**
    **We** will pay when a covered loss exceeds the applicable deductible shown on the Policy Declarations. **We** will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

2.  **Insurable Interest And Our Liability**
    In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3.  **What You Must Do After A Loss**
    In the event of a loss to any property that may be covered by this policy, **you** must:
    a)  immediately give **us** or **our** agent notice. Report any theft to the police as soon as possible.
    b)  protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

House & Home Policy

 **Allstate.**
You're in good hands.

c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.

d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.

e) produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.

f) as often as **we** reasonably require:

1) show **us** the damaged property. **We** have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of **you** or others, including, but not limited to, civil, governmental or military authorities, that prevent **us** from viewing and inspecting the loss. **We** may require **you** to accompany **us** when **we** conduct these activities.

2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.

3) produce representatives, employees, members of the **insured person's** household or others to the extent it is within the **insured person's** power to do so; and

g) within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:

1) the date, time, location and cause of loss;
2) the interest **insured persons** and others have in the property, including any encumbrances;
3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
4) any other insurance that may cover the loss;
5) any changes in title, use, occupancy or possession of the property that has occurred during the policy period; and
6) at **our** request, the specifications of any damaged **building structure** or other structure.

**We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

4. **Our Settlement Options**

In the event of a covered loss, **we** have the option to:

a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or

b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5, "How We Pay For A Loss."

Within 30 days after **we** receive **your** signed, sworn proof of loss, **we** will notify **you** of the option or options **we** intend to exercise.

5. **How We Pay For A Loss**

Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C**, payment for covered loss will be by one or more of the following methods:

a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:

1) the whole amount of loss for property covered under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision; or

2) the whole amount of loss for property covered under **Personal Property Protection–Coverage C**, without deduction for depreciation, is less than $2,500, **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the Limit Of Liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph c) and paragraph d) below if applicable, if **you** repair or replace the damaged,

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

destroyed or stolen covered property within 180 days of the actual cash value payment.

c) Building Structure Reimbursement. Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**, and shall not be payable for any losses excluded in **Section I—Your Property**, under **Losses We Do Not Cover Under Coverages A and B**, paragraph B.

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1) the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence premises**;
2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises**; or
3) the Limit Of Liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include

the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:
1) property covered under **Personal Property Protection–Coverage C**;
2) property covered under **Other Structures Protection–Coverage B** that is not a **building structure**;
3) wall-to-wall carpeting, fences, awnings and outdoor antennas, whether or not fastened to a **building structure**;
4) **roof surface(s)** when the loss is caused by **windstorm** or hail; or
5) land.

Payment under a), b) or c) above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, relocation or demolition of **building structures** or other structures.

d) Personal Property Reimbursement. Under **Personal Property Protection–Coverage C**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the Limit Of Liability shown on the Policy Declarations for **Personal Property Protection–Coverage C**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

House & Home Policy

 **Allstate**
You're in good hands.

payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:
1) property insured under **Dwelling Protection– Coverage A** and **Other Structures Protection– Coverage B**, except wall-to-wall carpeting;
2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3) articles whose age or history contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs and collector's items;
4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss; or
5) motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled and not licensed for use on public roads.

6. **Our Settlement Of Loss**
**We** will settle any covered loss with **you** unless some other person or entity is named in the policy. **We** will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award or a court judgment.

7. **Appraisal**
If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us**, the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A

written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

8. **Abandoned Property**
**We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

9. **Permission Granted To You**
a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy. A **building structure** under construction is not considered vacant.
b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

10. **Our Rights To Recover Payment**
When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

11. **Our Rights To Obtain Salvage**
**We** have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

**We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss. If no signed, sworn proof of loss is requested by **us**, **we** will notify **you** of **our** intent to exercise this option within 60 days after the date **you** report the loss to **us**.

When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

12. **Action Against Us**
No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which **Section I Conditions** applies, unless:
a) there has been full compliance with all policy terms; and
b) the action is commenced within one year after the inception of loss or damage.

13. **Loss To A Pair Or Set**
If there is a covered loss to a pair or set, **we** may:
a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
b) pay the difference between the actual cash value of the pair or set before and after the loss.

14. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

15. **No Benefit To Bailee**
This insurance will not benefit any person or organization that may be caring for or handling **your** property for a fee.

16. **Other Insurance**
If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

17. **Property Insurance Adjustment**
At each policy renewal, **we** may increase the Limit Of Liability shown on the Policy Declarations for **Dwelling Protection-Coverage A** to reflect the minimum amount of insurance coverage **we** are willing to issue for the succeeding policy period under **Dwelling Protection-Coverage A** for **your dwelling** and other property **we** cover under **Dwelling Protection-Coverage A**.

Any adjustment in the limit of liability for **Dwelling Protection-Coverage A** will result in an adjustment in the limit of liability for **Other Structures Protection-Coverage B** and **Personal Property Protection-Coverage C** in accordance with **our** manual of Rules and Rates.

Any adjustment in premium resulting from the application of this condition will be made based on

premium rates in use by **us** at the time a change in limits is made.

**We** will not reduce the Limit Of Liability shown on the Policy Declarations without **your** consent. **You** agree that it is **your** responsibility to ensure that each of the Limits Of Liability shown on the Policy Declarations are appropriate for **your** insurance needs. If **you** want to increase or decrease any of the Limits Of Liability shown on the Policy Declarations, **you** must contact **us** to request such a change.

18. **Mortgagee**
A covered loss will be payable to the mortgagee(s) named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b) give the mortgagee at least 10 days notice if **we** cancel this policy.

The mortgagee will:
a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;
b) pay upon demand any premium due if an **insured person** fails to do so;
c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
d) give **us** the mortgagee's right of recovery against any party liable for loss; and
e) after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

19. **Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**
In the event of a covered water loss under **Dwelling Protection-Coverage A**, **Other Structures Protection-**

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

House & Home Policy


**Allstate.**
You're in good hands.

Coverage B or **Personal Property Protection–Coverage C**, **we** will pay up to $5,000 for mold, fungus, wet rot or dry rot **remediation**.

**Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This Condition does not increase the limits of liability under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C**.

## Section II—Family Liability And Guest Medical Protection

### Family Liability Protection–Coverage X

**Losses We Cover Under Coverage X:**
Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

**Losses We Do Not Cover Under Coverage X:**
1.  **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
    a)  such **insured person** lacks the mental capacity to govern his or her conduct;

b)  such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
c)  such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

2.  **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

3.  **We** do not cover **bodily injury** to any person eligible to receive any benefits required to be provided, or voluntarily provided, by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

4.  **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

    **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

5.  **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion to:
    a)  a motor vehicle in dead storage or used exclusively on an **insured premises**;
    b)  any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
    c)  a motorized wheelchair;
    d)  a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
    e)  a golf cart owned by an **insured person** when used for golfing purposes;
    f)  a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
    g)  lawn or garden implements under 40 horsepower; or

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

h)  **bodily injury** to a **residence employee**.

6.  **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
    a)  has inboard or inboard-outboard motor power of more than 50 horsepower;
    b)  is a sailing vessel 26 feet or more in length;
    c)  is powered by one or more outboard motors with more than 25 total horsepower;
    d)  is designated as an airboat, air cushion, or similar type of watercraft; or
    e)  is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

    **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

7.  **We** do not cover **bodily injury** or **property damage** arising out of:
    a)  the negligent supervision by any **insured person** of any person; or
    b)  any liability statutorily imposed on any **insured person**;

    arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8.  **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

    **We** will not apply this exclusion to **bodily injury** which results from such discharge, dispersal, release or escape, if the discharge, dispersal, release or escape is sudden and accidental.

9.  **We** do not cover any **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

10. **We** do not cover any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

11. **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

12. **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

    **We** will not apply this exclusion to **bodily injury** or **property damage** arising from the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

13. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

14. **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. **We** will not apply this exclusion if the **property damage** is caused by fire, explosion or smoke.

15. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

16. **We** do not cover **bodily injury** or **property damage** caused by:
    a)  war, whether declared or undeclared;
    b)  warlike acts;
    c)  invasion;
    d)  insurrection;
    e)  rebellion;
    f)  revolution;
    g)  civil war;
    h)  usurped power;
    i)  destruction for a military purpose; or
    j)  action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

House & Home Policy



**Allstate**
You're in good hands.

17. **We** do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

18. **We** do not cover any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

19. **We** do not cover any loss, cost or expense arising out of any request, demand, or order that any **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of any type of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

20. **We** do not cover **bodily injury** or **property damage** arising out of nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. **Bodily injury** or **property damage** arising out of a nuclear hazard is not considered as arising from fire, explosion or smoke.

21. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

## Guest Medical Protection–Coverage Y

### Losses We Cover Under Coverage Y:
**We** will pay the reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, ambulance, hospital, licensed nursing and funeral services, and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:
1. on the **insured premises** with the permission of an **insured person**; or

2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee**.

### Losses We Do Not Cover Under Coverage Y:
1. **We** do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury** is of a different kind or degree than intended or reasonably expected; or
   c) such **bodily injury** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

2. **We** do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. **We** will not apply this exclusion to a **residence employee**.

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits required to be provided, or voluntarily provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

   **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

5. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

c) a motorized wheelchair;
d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
e) a golf cart owned by an **insured person** when used for golfing purposes;
f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
g) lawn or garden implements under 40 horsepower; or
h) **bodily injury** to a **residence employee.**

6. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
a) has inboard or inboard-outboard motor power of more than 50 horsepower;
b) is a sailing vessel 26 feet or more in length;
c) is powered by one or more outboard motors with more than 25 total horsepower;
d) is designated as an airboat, air cushion, or similar type of watercraft; or
e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

**We** will not apply this exclusion to **bodily injury** to a **residence employee.**

7. **We** do not cover **bodily injury** arising out of:
a) the negligent supervision by any **insured person** of any person; or
b) any liability statutorily imposed on any **insured person**;

arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

**We** will not apply this exclusion to **bodily injury** which results from such discharge, dispersal, release or escape,

if the discharge, dispersal, release or escape is sudden and accidental.

9. **We** do not cover **bodily injury** arising out of the rendering of, or failure to render, professional services by an **insured person**.

10. **We** do not cover **bodily injury** arising out of the past or present **business** activities of an **insured person**.

**We** will not apply this exclusion to **bodily injury** arising from the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

11. **We** do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12. **We** do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. **We** will not apply this exclusion to **bodily injury** to a **residence employee.**

13. **We** do not cover **bodily injury** caused by:
a) war, whether declared or undeclared;
b) warlike acts;
c) invasion;
d) insurrection;
e) rebellion;
f) revolution;
g) civil war;
h) usurped power;
i) destruction for a military purpose; or
j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

14. **We** do not cover **bodily injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

15. **We** do not cover **bodily injury** arising out of nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. **Bodily injury** arising out of a nuclear hazard is not considered as arising from fire, explosion or smoke

16. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

House & Home Policy

 **Allstate**

You're in good hands.

**We** will not apply this exclusion to **bodily injury** to a **residence employee**.

## Section II Additional Protection

**We** will pay, in addition to the limits of liability:

1.  **Claim Expenses**

    **We** will pay:

    a)  all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;

    b)  interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;

    c)  premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;

    d)  up to $150 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;

    e)  any other reasonable expenses incurred by an **insured person** at **our** request.

2.  **Emergency First Aid**

    **We** will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3.  **Damage To Property Of Others**

    At **your** request, **we** will pay up to $1,000 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

    **We** will not pay for **property damage**:

    a)  to property covered under **Section I** of this policy;

    b)  to property intentionally damaged by an **insured person** who has attained the age of 13;

    c)  to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or

    d)  arising out of:

        1)  past or present **business** activities;

        2)  any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or

3)  the ownership or use of a motorized land vehicle, trailer, aircraft, hovercraft or watercraft.

## Section II Conditions

1.  **What You Must Do After A Loss**

    In the event of **bodily injury** or **property damage**, **you** must do the following:

    a)  Promptly notify **us** or **our** agent stating:

        1)  **your** name and policy number;

        2)  the date, the place and the circumstances of the loss;

        3)  the name and address of anyone who might have a claim against an **insured person**;

        4)  the names and addresses of any witnesses.

    b)  Promptly send **us** any legal papers relating to the accident.

    c)  At **our** request, an **insured person** will:

        1)  cooperate with **us** and assist **us** in any matter concerning a claim or suit;

        2)  help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;

        3)  attend any hearing or trial.

    d)  Under the **Damage To Property Of Others** protection, this must be made within 60 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

    Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2.  **What An Injured Person Must Do—Guest Medical Protection-Coverage Y**

    If someone is injured, that person, or someone acting for that person, must do the following:

    a)  Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.

    b)  Give **us** written authorization to obtain copies of all medical records and reports.

    c)  Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

3. **Our Payment Of Loss—Guest Medical Protection-Coverage Y**
   **We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

4. **Our Limits Of Liability**
   Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under **Family Liability Protection-Coverage X** for damages resulting from one **occurrence** will not exceed the Limit Of Liability shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**.

   **Our** total liability under **Guest Medical Protection-Coverage Y** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" Limit Of Liability shown on the Policy Declarations.

5. **Bankruptcy**
   **We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

6. **Our Rights To Recover Payment—Family Liability Protection-Coverage X**
   When **we** pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7. **Action Against Us**
   a) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, unless there has been full compliance with all policy terms.
   b) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Family Liability Protection-Coverage X**, unless the obligation of an **insured person** to pay has been finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person and **us**, and the action against **us** is commenced within one year of such judgment or agreement.

   c) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Guest Medical Protection-Coverage Y**, unless such action is commenced within one year after the date the expenses for which coverage is sought were actually incurred.
   d) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Section II Additional Protection**, unless such action is commenced within one year after the date the claim expenses or emergency first aid expenses for which coverage is sought were actually incurred, or within one year after the date of loss to the property if coverage is being sought under the **Damage To Property Of Others** provision.
   e) No one shall have any right to make **us** a party to an action to determine the liability of an **insured person**.

8. **Other Insurance—Family Liability Protection-Coverage X**
   This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

# Section III—Optional Protection

## Optional Coverages
The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Building Codes–Coverage BC**
   **We** will pay up to the Limit Of Liability shown on the Policy Declarations for Building Codes coverage to comply with local building codes after covered loss to the **dwelling** or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of the **dwelling**.

2. **Increased Coverage On Business Property–Coverage BP**
   The limitation on **business** property located on the **residence premises**, under **Personal Property**

**EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL**

House & Home Policy

 **Allstate**
You're in good hands.

Protection–**Coverage C**, is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the **residence premises**.

3. **Fire Department Charges–Coverage F**
The $500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

4. **Loss Assessments–Coverage G**
If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a private residence, including the grounds, related structures and private approaches to them.

**We** will pay **your** share of any special assessments charged against all building owners by the association up to the Limit Of Liability shown on the Policy Declarations, when the assessment is made as a result of:
a) sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or
b) **bodily injury** or **property damage** covered under **Section II** of this policy.

Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

**We** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or **property damage** exceeds $500 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I** and **II** of this policy and the **Section I** and **II Conditions**, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

5. **Extended Coverage On Jewelry, Watches And Furs–Coverage J**
**Personal Property Protection–Coverage C** is extended to pay for sudden and accidental direct physical loss to the following property, subject to the provisions in this coverage:
a) jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and
b) furs, including any item containing fur which represents its principal value.

The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Personal Property Protection–Coverage C**. However, in no event will coverage be less than would have applied in the absence of **Coverage J**.

The following exclusions contained in **Losses We Do Not Cover Under Coverage C** apply to the coverage afforded under this **Coverage J**: items A.7, A.8, D.1 and D.3. In addition, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.
a) wear and tear;
b) gradual deterioration;
c) inherent vice; or
d) insects or vermin.

Any deductible shown on the Policy Declarations applicable to **Personal Property Protection–Coverage C**, also applies to a loss under this coverage.

6. **Increased Coverage On Theft Of Silverware–Coverage ST**
The $2,500 limitation on theft of goldware, silverware, pewterware and platinumware under **Personal Property Protection–Coverage C** is increased to the amount shown on the Policy Declarations.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

## Policy Endorsement

Page **1** of 1



*The following endorsement changes your policy.*
*Please read this document carefully and keep it with*
*your policy.*

## Windstorm and Hail Deductible Endorsement – AVP82 (2016)

Under **Section I Conditions**, Conditions 1, **"Deductible,"** the following is added:

> **Windstorm** And Hail Deductible
> The windstorm and hail deductible applies in the event of covered loss caused by **windstorm** or hail.
>
> The **windstorm** and hail deductible amount will appear on **your** Policy Declarations. **We** will pay only when a covered loss to which this deductible applies exceeds the **windstorm** and hail deductible amount. **We** will then pay only the excess amount.
>
> If another deductible applicable to the loss exceeds the **windstorm** and hail deductible, the greater deductible will be applied to the loss.

All other provisions of **your** policy apply.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

## Policy Endorsement

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

# Ohio Amendatory Endorsement – AVP103-3

I.  In the **General** section the following changes are made:

A.  The **Cancellation** provision is replaced by the following:

**Cancellation**
**Your** Right to Cancel:
**You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:
**We** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, **we** may cancel this policy for any reason by giving **you** at least 30 days notice before the cancellation takes effect.

When this policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:

1.  non-payment of premium;
2.  the policy was obtained by misrepresentation, fraud or concealment of material facts;
3.  material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or
4.  there has been a substantial change or increase in hazard in the risk **we** originally accepted.

If the cancellation is for non-payment of premium, **we** will give **you** at least 10 days notice. If the cancellation is for any other reason, **we** will give **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:
**We** have the right not to renew or continue the policy beyond the current policy period. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 30 days before the end of the policy period. **Our** mailing the notice of nonrenewal to **you** will be deemed proof of notice.

B.  The **Misrepresentation, Fraud Or Concealment** provision is replaced by the following:

**Misrepresentation, Fraud Or Concealment**
It is understood and agreed that the statements made by any named insured, or any applicant, in the application for insurance, during the application process, during the renewal process, or on the Policy Declarations, are warranties and are incorporated into, and shall form part of this policy.

This entire policy is void from its inception if any warranty made by any named insured, or any applicant, is found to be false.

**We** may not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

C.  The following provisions are added:

**Conditional Reinstatement**
If **we** mail a cancellation notice because **you** didn't pay the required premium when due and **you** then tender payment by check, draft, or other remittance which is not honored upon presentation, **your** policy will terminate on the date and time shown on the cancellation notice and any notice **we** issue which waives the cancellation or reinstates coverage is void. This means that **we** will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

**Loss Reduction And Other Items**
From time to time and in **our** sole discretion, **we** may provide **you**, or allow others to provide **you**, with:

1.  items, memberships, special offers, merchandise, services, classes, seminars or other things of value designed to help **you** or other persons insured under this policy manage the risks **you** or they face, including, but not limited to, loss reduction or safety-related items; or

2.  items, memberships, special offers, merchandise, services, classes, seminars or things of any other type that **we** think may be of value to **you** or someone else insured under this policy.

These items, memberships, special offers, merchandise, services, classes, seminars or other things of value may be provided in any form, including, but not limited to, redemption codes, coupons, vouchers and gift cards.

II.  In **Section I—Your Property**, the following changes are made:

A.  Under **Other Structures Protection–Coverage B, Losses We Do Not Cover Under Coverages A and B**, item D.10 is replaced by the following:

10.  Vandalism or malicious mischief including, but not limited to, fire or other perils resulting from acts of vandalism or malicious mischief, if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

 **Allstate.** :c

You're in good hands.

malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

B. Under **Personal Property Protection–Coverage C, Property We Cover Under Coverage C**, item 1 is replaced by the following:

1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from the **residence premises**, coverage is limited to 10% of **Personal Property Protection–Coverage C**.

   This limitation does not apply to personal property:
   a) in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there; or
   b) in use at a temporary residence when a direct physical loss **we** cover makes **your residence premises** uninhabitable.

C. Under **Personal Property Protection–Coverage C, Losses We Cover Under Coverage C**, item 8 is replaced by the following:

8. Vandalism and malicious mischief.

   **We** do not cover vandalism or malicious mischief including, but not limited to, fire or other perils resulting from acts of vandalism or malicious mischief, if **your dwelling** has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

III. In **Section I Additional Protection**, item 1 is replaced by the following:

1. **Additional Living Expense**
   **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under Dwelling Protection–Coverage A, Other Structures Protection–Coverage B or Personal Property Protection–Coverage C makes **your** residence premises uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss.

   Payment for additional living expense as a result of a covered loss under Dwelling Protection–Coverage A, Other Structures Protection–Coverage B or Personal Property Protection–Coverage C will be limited to the least of the following:
   a) the time period required to repair or replace the property **we** cover, using due diligence and dispatch;
   b) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
   c) 24 months.

These periods of time are not limited by the termination of this policy.

In no event shall **our** payment for additional living expenses exceed the Limit Of Liability shown on **your** Policy Declarations for Additional Living Expense.

**We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

All other policy terms and conditions apply.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

**Policy Endorsement**



*The following endorsement changes your policy.
Please read this document carefully and keep it with
your policy.*

## Water Back-Up Endorsement – AVP258

For an additional premium and when **your** Policy Declarations
indicates that **Water Back-Up** applies, the following coverage
is added:

**Water Back-Up–Coverage WB**
**We** will cover sudden and accidental direct physical loss to
property **we** cover under **Dwelling Protection–Coverage A**,
**Other Structures Protection–Coverage B** and **Personal
Property Protection–Coverage C** caused by water or any other
substances within **your dwelling** or other **building structures**
on the **residence premises** which:
a)  backs up through sewers or drains located within the
    **residence premises**; or
b)  overflows from a sump pump, sump pump well or other
    system located within the **residence premises** designed
    for the removal of subsurface water which is drained from
    a foundation area of a structure.

The limit of liability for **Water Back-Up–Coverage WB** is
shown on **your** Policy Declarations. This is the total amount for
any one loss available under **Water Back-Up–Coverage WB**
including amounts paid or payable under **Water Back-Up–
Coverage WB Additional Protection**. Once this limit of liability
for **Water Back-Up–Coverage WB** is exhausted, no further
amounts will be available.

The insurance provided by **Water Back-Up–Coverage WB** shall
be excess over any other insurance that also applies to a loss
covered under this coverage.

This coverage does not apply if the loss occurs or is in progress
within the first ten days that the Water Back-Up Endorsement
is initially bound except if the Water Back-Up Endorsement is
bound at the original inception of **your** policy.

If **you** increase the limit and/or lower the deductible for **your**
existing Water Back-Up Endorsement, **your** coverage will be
limited to the prior limit and/or deductible for the first ten days
after the new limit and/or deductible is bound to **your** policy.

The deductible for **Water Back-Up–Coverage WB** will be
shown on **your** Policy Declarations. The deductible for **Water
Back-Up–Coverage WB** will apply to a loss covered under
**Water Back-Up–Coverage WB**.

For the purposes of this endorsement only, **Section I
Additional Protection** is replaced with the following:

•  **Water Back-Up–Coverage WB Additional Protection**
   The coverage afforded under **Water Back-Up–Coverage
   WB Additional Protection** does not increase the limit of
   **Water Back-Up–Coverage WB**.

•  **Additional Living Expense**
   **We** will pay the reasonable increase in living expenses
   necessary to maintain **your** normal standard of living when
   a direct physical loss covered under **Water Back-Up–
   Coverage WB** makes **your residence premises**
   uninhabitable. However, additional living expense due to
   remediation of mold, fungus, wet rot or dry rot will not be
   paid in addition to any amounts paid or payable under
   **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot
   Remediation As A Direct Result Of A Water Loss Covered
   Under Water Back-Up–Coverage WB**.

   Payment for additional living expense as a result of a direct
   physical loss covered under **Water Back-Up–Coverage
   WB** will be limited to the least of the following:
   a)  the time period required to repair or replace the
       property **we** cover, using due diligence and dispatch;
   b)  if **you** permanently relocate, the shortest time for **your**
       household to settle elsewhere; or
   c)  12 months.

   These periods of time are not limited by the termination of
   this policy.

   **We** do not cover any lost income or expense due to the
   cancellation of a lease or agreement.

•  **Debris Removal**
   **We** will pay reasonable expenses **you** incur to remove
   debris of covered property damaged by a loss **we** cover
   under **Water Back-Up–Coverage WB**.

•  **Temporary Repairs After A Loss**
   **We** will reimburse **you** for the reasonable and necessary
   cost **you** incur for temporary repairs to protect covered
   property from further imminent covered loss following a
   loss **we** cover under **Water Back-Up–Coverage WB**. This
   coverage does not increase the limit of liability applying to
   the property being repaired.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

In **Section I Conditions**, under item 19, **Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Covered Water Loss**, the following provision is added:

> **Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Water Loss Covered Under Water Back-Up-Coverage WB**
> In the event of a water loss covered under **Water Back-Up-Coverage WB**, **we** will pay up to $5,000 for mold, fungus, wet rot or dry rot **remediation**.
>
> **Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Dwelling Protection-Coverage A, Other Structures Protection-Coverage B** or **Personal Property Protection-Coverage C** damaged by a water loss covered under **Water Back-Up-Coverage WB** , including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.
>
> Payments under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Remediation As A Direct Result Of A Water Loss Covered Under Water Back-Up-Coverage WB** will not reduce amounts paid or payable under **Water Back-Up-Coverage WB**.

All other policy terms and conditions apply.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

Policy endorsement

---

*The following endorsement changes your policy.*
*Please read this document carefully and keep it with your policy.*

## Amendatory Endorsement – AVP381

In **Section II Additional Protection**, item 3, **Damage To Property Of Others**, is replaced by the following:

3. **Damage To Property Of Others**

   At **your** request, **we** will pay:

   A. subject to the $10,000 per excursion limit described in this sub-item 3.A, for **property damage** an **insured person** causes to someone else's property which is, or is furnished in connection with, a private residence, or a hotel room or similar accommodation, rented to, occupied or used by, or in the care of, an **insured person** for temporary overnight lodging purposes while such **insured person** is traveling, vacationing or otherwise away from their residence.

      The total amount **we** will pay will not exceed $10,000 per excursion. For purposes of this protection, an excursion begins the day an **insured person** leaves their residence for the purpose described above and ends on the day such person returns to their residence with no intent to continue that excursion. However, in the event multiple **insured persons** participate in any portion of an excursion, the excursion begins the day the first **insured person** leaves their residence for the purpose described above and ends on the day that all **insured persons** have returned to their residence with no intent to continue that excursion.

      **We** will not pay more than $10,000 per excursion, regardless of the number of **insured persons** participating in the excursion or causing **property damage** during the excursion, the number of separate acts causing **property damage**, the duration of the excursion, or the number of separate policy periods through which the excursion extends.

   B. up to $1,000 each time an **insured person** causes **property damage** to someone else's property of a type for which no protection is afforded under sub-item 3.A, above.

      At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

      **We** will not pay for **property damage**:
      a) to property covered under **Section I** of this policy;
      b) to property intentionally damaged by an **insured person** who has attained the age of 13;
      c) under sub-item 3.A to property damaged in a student dormitory, fraternity, sorority or off-campus housing caused by any student other than **you**;
      d) 1) to property owned by an **insured person**;
         2) to property of an **insured person's** tenant, roomer or boarder;
         3) to property of any employee of an **insured person's** tenant, roomer or boarder;
         4) to property of any guest of an **insured person's** tenant, roomer or boarder; or
         5) to property of any resident in **your** household; or
      e) arising out of:
         1) past or present **business** activities;
         2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
         3) the ownership or use of a motorized land vehicle, trailer, aircraft, hovercraft or watercraft.

All other policy terms and conditions apply.

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

 

**EXHIBIT B**

PO BOX 660328
DALLAS TX 75266032E

You're in good hands.

MARK MESSER
25 W ORCHARD AVE
LEBANON OH 450362107

September 28. 2021

INSURED: MARK MESSER
DATE OF LOSS: August 14, 2021
CLAIM NUMBER: 0637058124 1LD
POLICY NUMBER: 000826041380
LOSS LOCATION:    25 W ORCHARD AVE.
                 LEBANON, OH. 45036
POLICY TYPE: Homeowners
LOSS TYPE: Fire

PHONE NUMBER: 248-994-9723
FAX NUMBER: 855-219-7494

Dear MARK MESSER,

Please be advised your claim has been transferred to me for further investigation. At this time. you are requested to send information concerning your loss on the enclosed form entitled "Sworn Statement in Proof of Loss." You must return the completed Proof of Loss within 60 days from the date of the loss or **30 days** from the date of this letter. whichever is later.

Please read the representations printed in the Proof of Loss carefully. Please be advised that Allstate Vehicle and Property Insurance Company does not waive any rights under the policy by furnishing this document or assisting you in the completion of the form.

In addition to completing the proof of loss, please provide a detailed estimate of the damages sustained to the property as a result of the loss described above, the cost of repairing such damage must be prepared by a person competent to prepare such estimates, which if requested, must be authenticated by bids from a general contractor and/or subcontractor competent to make such repairs; AND

Please furnish a comprehensive inventory of the personal property damage or destroyed in the loss, state the price, place and date of purchase, present value (allowing for age, use and condition) and estimate amount for the repairs if the personal property can be repaired. Also, please attach any and all evidence of the purchase in your possession, such as invoices, cancelled checks, receipts, or other written documents.

*It should be expressly understood that no decision has been reached with respect to your claim.*

Please have the documentation signed. notarized and returned to this office with all supporting documentation. *Please send original documents and retain copies for your personal records.*

In some cases. additional information may be requested to support your claim. Your policy requires you to produce documents and allow us to make copies. permit reasonable inspection(s) of the damaged property by representatives of Allstate Vehicle and Property Insurance Company and if requested. your appearance at an Examination Under Oath. This section of your policy is reproduced on the following page for your review.

0637058124 1LD

**EXHIBIT C**
**TO ALLSTATE'S NOTICE OF REMOVAL**

This letter and the enclosed forms do not supersede the terms and conditions of the policy in any way. All of the rights and conditions specified in the policy are preserved for your benefit and for the benefit of Allstate Vehicle and Property Insurance Company. The sole purpose of this letter is to provide you with an opportunity to comply with the conditions of the policy.

Please complete and return by FAX OR EMAIL ONLY to 855-219-7494 or claims@claims.allstate.com.  Please include your claim number on each page of documents being sent by FAX and in the subject line of all email correspondence. If you have any questions I can be reached at 248-410-9299. Thank you.

Sincerely,

*LORI DAVIS*

LORI DAVIS
248-994-9723
Allstate Vehicle and Property Insurance Company

Enclosures

EXHIBIT C
TO ALLSTATE'S NOTICE OF REMOVAL

*The following is reproduced from your policy:*

<u>WHAT YOU MUST DO AFTER A LOSS</u>:

In the event of a loss to property that this insurance may cover, you must do the following things:

A. Promptly give us or our agent written notice. Report any theft to the police. If the loss involves a credit card or charge plate, written notice must also be given to the company that issued the card or plate.

B. Protect the property from further loss. This includes making reasonable and necessary repairs to protect it.

C. Promptly separate the damaged from undamaged personal property. Give us a detailed list of the damaged, destroyed, or stolen property, showing the quantity, cost, actual cash value, and the amount of the loss claimed.

D. Give us all original bills, invoices and other vouchers, or certified copies, which we may reasonably request and keep an accurate record of any repair expenses.

E. Produce receipts for any increased costs to maintain your standard of living while you reside elsewhere, and records pertaining to any loss of rental income.

F. Show the damaged property whenever we reasonably ask. At our request, submit to examinations under Oath, separately and apart from any other person. Produce representatives, employees, members of the Insured's household at our request.

G. Within 60 days after the loss, give us a signed, Sworn Proof of Loss. This statement should include the following information:

   1. The time and cause of the loss
   2. The interest you and others have in the property, including any encumbrances
   3. The actual cash value and amount of loss of each item damaged or destroyed.
   4. Other insurance that may cover the loss.
   5. Changes in title, use occupancy, or possession of the property during the policy period.
   6. The specifications of any damaged building alteration or improvement we may request.
   7. Evidence supporting a claim under the Credit Card and Check Forgery protection, this should state the cause and the amount of the loss ·

**EXHIBIT C**
**TO ALLSTATE'S NOTICE OF REMOVAL**