UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARK AND JENNIFER MESSER, | : | Case No. 1:22-cv-438 |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, | : | |
| Defendant. | : | |

**ORDER FOLLOWING *IN CAMERA* REVIEW**

This civil case is before the Court for an *in camera* review of fourteen documents withheld from production by Defendant.

## I. BACKGROUND

Plaintiffs suffered a house fire around August 14, 2021. (Doc. 5). Plaintiffs had home insurance through Defendant Allstate Vehicle and Property Insurance Company ("Allstate") and promptly notified Allstate of the loss. (*Id.*) For the next ten months, Allstate took an exhaustive claim review process, including an under-oath examination and demanding that Plaintiffs produce a number of documents such as tax returns, bank statements, phone records, mortgage records, insurance agent communications, and personal Facebook archives. (*Id.*)

On June 23, 2022, having received no resolution of their claim, Plaintiffs initiated the current action in the Warren Country Court of Common Pleas. (*Id.*) Plaintiffs asserted claims for breach of contract, declaratory judgment, and bad faith. (*Id.*) On

June 29, 2022, Allstate subsequently denied coverage in part.[1] (Min. Entry & Not. Order, July 25, 2023). And on July 28, 2022, once Allstate was served, Allstate removed the action to this federal court.

Since the onset, Plaintiffs' claims have been plagued by Allstate's inaction, resulting in continued court intervention. First, Allstate halted Plaintiffs ability to proceed with the case, claiming it needed to resolve a mortgagee claim related to Plaintiffs' loss first.[2] (Min. Entry & Not. Order, Dec. 6, 2022; Min. Entry & Not. Order, Jan. 9, 2023; Min. Entry & Not. Order, March 13, 2023). Then, Allstate completely failed to respond to discovery and Plaintiffs' settlement demand. (Min. Entry & Not.

---

[1] Plaintiffs' policy provided for the following coverage:

| Dwelling protection | $289,381.00 |
| Other structures protection | $14,470.00 |
| Personal property protection | $217,036.00 |
| Additional living expenses | Up to 24 months, not to exceed $115,753 |

(*See* Doc. 5 at 18). To date, Allstate claims that it has paid: (1) a $5,000 advance to Plaintiffs a few days after the fire; (2) $4,600 to Plaintiffs' parents for rent; (3) $27,466.08 in temporary housing and living expenses; and (4) $120,144.20 to 1st National Bank, Plaintiffs' mortgagee. (Doc. 13 at 1-2).

[2] The mortgagee payment and Allstate's calculation of actual cash value is still an issue between the parties, and Plaintiffs have been granted leave to file any necessary motion in due course. (Min. Entry & Not. Order, Oct. 24, 2023). Specifically, pursuant to the policy, Allstate will pay the actual cash value of the loss. (Doc. 5 at 41-42). And "[w]hen determining the actual cash value of the loss, the costs necessary to repair, rebuild or replace the destroyed, damaged or stolen property may be depreciated." (*Id.* at 21). Here, Allstate determined that the actual cash value of Plaintiffs' home minus depreciation was $120,144.20, which amount it paid to Plaintiffs' mortgagee, 1st National Bank. (Doc. 13 at 3). When Allstate paid the mortgagee, Plaintiffs still owed approximately $257,512.60 on the mortgage, leaving Plaintiffs responsible for the rest. (*Id.*) Thus, Plaintiffs have taken issue with Allstate's failure to pay the full mortgagee claim. As a final matter, the Court notes that, as of the policy's effective date (April 30, 2021; four months before the fire), Allstate found that the estimated cost to replace Plaintiffs' home was $289,381. (Doc. 5 at 20).

Order, Jan. 9, 2023; Min. Entry & Not. Order, March 13, 2023 ("Defendant was generally unresponsive on status.")).

Next, Allstate substituted its counsel. (Doc. 9; Not. Order, Mar. 27, 2023). But the discovery issues did not resolve, requiring an informal discovery conference pursuant to S.D. Ohio Local Rule 37.1. (Min. Entry & Not. Order, July 25, 2023).

**Allstate then completely ignored the Court's discovery Order and Plaintiffs requests for discovery pursuant to that Order**. So, on October 3, 2023, Plaintiffs requested another conference with the Court. (*E.g.*, Doc. 11; Not. Order Oct. 12, 2023). And once the Court set a status conference, Allstate finally started complying with its discovery obligations. (*E.g.*, Docs. 12, 13).

At that status conference, Plaintiffs expressed their dispute with a small number of Allstate's claims of privilege and work product. (Min. Entry & Not. Order, Oct. 24, 2023). The parties agreed that, given the limited number of documents at issue, *in camera* review without briefing was preferred. This Order follows.

## II. STANDARDS OF REVIEW

Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance for discovery purposes is extremely broad. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Mellon v. Cooper–Jarrett, Inc.*, 424 F.2d 499, 500–01 (6th Cir. 1970). However, "district

3

courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)).

The burden of establishing a claim of privilege rests with the party asserting it. *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006); *Glazer v. Chase Home Fin. LLC*, No. 1:09-CV-1262, 2015 WL 12733393, at *2 (N.D. Ohio June 15, 2015). If a claim of privilege is challenged, the party asserting it must establish each element by competent evidence. *See Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010); *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07-CV-1190, 2010 WL 4117552, at *5 (S.D. Ohio Oct. 19, 2010) (stating that a party must establish the factual predicate for a claim of privilege by "competent evidence").

"In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006).

### A. Attorney-Client Privilege

Pursuant to Ohio law, the attorney-client privilege aims to encourage candid communication between attorneys and their clients and therefore "protects against any dissemination of information obtained in the confidential relationship." *MA Equip. Leasing I, L.L.C. v. Tilton*, 10th Dist. Nos. 12AP–564, 12AP–586, 2012-Ohio-4668, ¶ 19 (Oct. 9, 2012).

4

> Under the privilege, "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived."

*Id.* at ¶ 20 (quoting *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, ¶ 18 (2005) (internal quotation marks and citation omitted)).

However, Ohio has established an exception to that general rule for cases alleging bad-faith denials by an insurer. *Boone v. Vanliner Insurance Company*, 2001-Ohio-27, 91 Ohio St. 3d 209, 744 N.E.2d 154. Pursuant to the *Boone* exception,

> in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage. At that stage of the claims handling, the claims file materials will not contain work product, i.e., things prepared in anticipation of litigation, because at that point it has not yet been determined whether coverage exists.

*Id.* at 158.

The *Boone* exception applies only to attorney-client communications; it does not apply to the work-product doctrine. *See Luxottica of Am. Inc. v. Allianz Glob. Risks US Ins. Co.*, No. 1:20-CV-698, 2022 WL 1204870, at *3 (S.D. Ohio Apr. 22, 2022).

**B.  Work Product Doctrine**

The work-product doctrine is "broader" than attorney-client privilege. *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). This doctrine prevents "unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). "[T]he work product

5

doctrine protects any document prepared in anticipation of litigation by or for the attorney." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) (citation omitted); Fed. R. Civ. P. 26(b)(3). "Application of Rule 26(b)(3) is not limited solely to attorneys. Rather, the Rule explicitly states that it applies to documents and tangible things prepared by or for the party and the party's representative." *Eversole v. Butler Cty. Sheriff's Off.*, No. C-1-99-789, 2001 WL 1842461, at *2 (S.D. Ohio Aug. 7, 2001).

"There are two considerations when determining whether a document was 'prepared in anticipation of litigation or for trial': '(1) whether that document was prepared because of a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable.'" *Shah v. Metro. Life Ins. Co.*, No. 2:16-CV-1124, 2017 WL 5712562, at *3 (S.D. Ohio Nov. 27, 2017) (quoting *In re Prof'ls Direct.*, 578 F.3d 432, 439 (6th Cir. 2009)). "The mere fact that a document was prepared by an attorney does not necessarily lead to the characterization of that document as work product." *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 181 (S.D. Ohio 1993). Indeed, when considering the work product doctrine, "[s]ome courts hold that the possibility of litigation must be identifiable because of specific claims that have already arisen," and "other courts consider whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id*. (cleaned up).

## III. ANALYSIS

Defendant submitted the following fourteen documents for *in camera* review:

| No.[3] | Name | Date | Description | Def.'s Objection |
|---|---|---|---|---|
| 1 | New Loss OH | 8/16/2021 | Email from legal assistant Victoria Litteriello, on behalf of attorney Brad Gordon from Grotefeld Hoffmann, LLP, to Mark Schockman at Fire Scienve Investigation regarding the assignment to investigate the Messer fire loss. | Work Product |
| 2 | Cody Callahan | 8/10/2022 | Email from attorney Jason Walker from Rolfes Henry Co., LPA to Schockman regarding Cody Callahan. | Work Product |
| 3 | Mark Messer-Lebanon Ohio | 9/2/2021; 9/9/2021 | Multiple email exchanges between Litteriello, on behalf of Gordon, and Schockman regarding the assignment to investigate the Messer fire loss. | Work Product |
| 4 | Mark Messer | 7/26/2022 | Email from Schockman to Walker regarding the EUO of Mark Messer. | Work Product |
| 5 | Draft Report for Review | 8/10/2022 | Email from Schockman to Walker regarding the EUO of Mark Messer. | Work Product |
| 6 | New Loss OH | 8/1/21 – 9/23/21 | Multiple email exchanges between Litteriello, on behalf of Gordon, and Schockman regarding the assignment to investigate the Messer fire loss. | Work Product |

---

[3] During discovery, parties usually mark documents with specific identifiers (*i.e.*, Bates numbers). Marking documents in such a manner makes it easier for all parties to reference specific documents. Allstate did not do that for all documents. Thus, for the sake of clarity, the Court references Allstate's description of each document and then numbers it.

| No.[3] | Name | Date | Description | Def.'s Objection |
|---|---|---|---|---|
| 7 | Mark Messer – Lebanon, Ohio | 11/13/21 | Email from Schockman to Walker regarding investigation of fire loss. | Work Product |
| 8 | Mark Messer – Allstate #0637058124 | 11/17/21 | Email from Schockman to Walker and Allstate employees Lori Petroski and Edward Mattox regarding the air scrubber. | Work Product |
| 9 | ALLSTATE_0528 | 9/27/2021 | Email from Gordon to Litteriollo, Mattox, and Allstate employee Elizabeth Ovington regarding cause and origin investigation. | Work Product |
| 10 | ALLSTATE_1005 - ALLSTATE_1006 | undated | Litigation file: Review of discovery document with notes that were created in anticipation of litigation. | Work Product |
| 11 | ALLSTATE_1059 - ALLSTATE_1063 | undated | Litigation file: Review of discovery document with notes that were created in anticipation of litigation. | Work Product |
| 12 | ALLSTATE_1171 - ALLSTATE_1177 | undated | Litigation file: Review of discovery document with notes that were created in anticipation of litigation. | Work Product |
| 13 | ALLSTATE_1289 - ALLSTATE_1290 | 9/27/2021 | Email from Gordon to Litteriollo, Mattox, and Ovington regarding cause and origin investigation. | Work Product |
| 14 | ALLSTATE_2977 - ALLSTATE_2978 | 10/14/2021 | Email from Walker to co-counsel Ryan Pelfray and Allstate employees Lori Davis Monte Cummings regarding investigation. | Work Product |

**A.     Email Communications with Allstate's Subrogation Attorneys (Nos. 1, 3, 6, 9, 13)**

These documents contain numerous email exchanges between Allstate employees, Mark Schockman (fire origin and cause investigator), and attorney Brad Gordon and

8

legal assistant Victoria Litteriollo from Grotefeld and Hoffmann LLP ("G&H"). The email communications range in date from August 16, 2021 (about two days after the fire) to September 27, 2021.

Allstate argues that these documents are protected by work product. The Court disagrees. Nothing in the content or context of these documents reflects that the documents were prepared in anticipation of litigation or trial. Indeed, the communications suggest that G&H was retained to take an initial subrogation assessment of the Messer's claim, an act often taken in the ordinary course of business for insurers. And G&H closed its file on September 27, 2021, long before any determination of coverage was made. (*See* No. 13, ALLSTATE_1290). Thus, Allstate has not shown that the parties to these documents reasonably or subjectively anticipated litigation.[4]

Accordingly, Allstate's objection to producing Nos. 1, 3, 6, 9, and 13 is **OVERRULED** and Allstate **SHALL** produce these documents to Plaintiff.

### B. Email Communications with Attorney Jason Walker Prior to Denying the Claim (Nos. 7, 8, 14)

These documents contain email exchanges between Allstate employees, Schockman, and attorneys Jason Walker and Ryan Pelfrey of Rolfes Henry Co., LPA. The email communications range in date from October 14, 2021 to November 17, 2021.

Allstate argues that these documents are protected by work product. The Court disagrees. To be sure, at that time, Allstate may have thought that the Messer's fire was

---

[4] Of course, these communications likely contain attorney-client communications. However, to the extent Allstate claims attorney-client privilege, the *Boone* exception applies.

suspect. But the context of the documents shows that Allstate was still investigating the origin and cause of the fire between October 14 and November 17, 2021. And it took until June 29, 2022 for Allstate to deny coverage in part. (*E.g.*, Min. Entry & Notation Order, July 25, 2023). Thus, the particular facts of this case suggest that these documents were prepared during the ordinary course of business (*i.e.*, Allstate's investigation of a claim), and cannot fairly be said to have been prepared because of the prospect of litigation.

Accordingly, Allstate's objection to producing Nos. 7, 8, and 14 is **OVERRULED** and Allstate **SHALL** produce these documents to Plaintiff.[5]

### C. Email Communications with Attorney Jason Walker After Denying the Claim (Nos. 2, 4, 5)

These documents contain email exchanges between Schockman and Walker. The email communications range in date from July 26, 2022 to August 10, 2022. Allstate argues that these documents are protected by work product. The Court agrees. By that time, Allstate had already been served with the current action. Thus, these individuals not only anticipated litigation, but knew litigation was happening. Accordingly, Allstate's objection is sustained.

### D. Allstate's Litigation File (Nos. 10, 11, 12)

Allstate argues that these documents are protected by work product. These documents were part of Allstate's litigation file and include notes created by Attorney

---

[5] Of course, these communications likely contain attorney-client communications. However, to the extent Allstate claims attorney-client privilege, the *Boone* exception applies.

Walker. The Court agrees that document Nos. 10, 11, and 12 are protected by the work product doctrine.[6] Allstate's objection is sustained.

## IV. CONCLUSION

Accordingly, Plaintiffs' request to produce documents Nos. 1, 3, 6, 7, 8, 9, 13, and 14 is **GRANTED**. Plaintiffs' request to produce documents Nos. 2, 4, 5, 10, 11, and 12 is **DENIED**.

**IT IS SO ORDERED.**

Date: 11/28/2023

Timothy S. Black
United States District Judge

---

[6] To the extent these documents exist without Walker's notes, the documents are not protected by work product and must be produced.